**CITY OF MIDLAND, Richard L. Czech, individually and in his official capacity as Chief of Police, City of Midland Police Department, and J.W. Marugg, individually and in his official capacity as Lieutenant, City of Midland Police Department, Petitioners,**

v.

**Milton O'BRYANT, Leonard Hendon, Jr., Jimmie Cross, Joe Ortiz, and Marvin Rasco, Respondents.**

No. 97–0954.

Supreme Court of Texas.

Argued Sept. 9, 1998.

Decided June 15, 2000.

Keith David Stretcher, Julia E. Vaughan, Rick D. Davis, David Wayne Lauritzen, Midland, for Petitioners.

Mark W. Robinett, John Judge, Austin, Glen D. Aaron, II, John E. Gunter, Midland, for Respondents.

Justice OWEN delivered the opinion of the Court.

The opinion issued April 6, 2000, is withdrawn, and the following opinion is substituted in its place:

The principal issue in this case is whether an employer owes a duty of good faith and fair dealing to its employees. The plaintiffs are present or former City of Midland police officers. They sued two other officers and the City asserting various causes of action that have as their nucleus allegations of retaliation and discrimination. The trial court granted summary judgment for the defendants on all claims. The plaintiffs appealed, and the court of appeals affirmed in part, reversed in part, vacated the trial court's judgment in part, and remanded the case to the trial court. The City and the defendant police officers seek review. We hold that (1) there is no cause of action in Texas based on a duty of good faith and fair dealing in the context of an employer/employee relationship; (2) there is no evidence to support the plaintiffs' claims of intentional infliction of emotional distress; and (3) the claims of two plaintiffs for reinstatement as a remedy for alleged violations of the Texas Constitution should be remanded to the trial court for further proceedings. Accordingly, we affirm the judgment of the court of appeals in part, reverse in part, and remand the reinstatement claim of Milton O'Bryant[1] to the trial court.

## I

The five plaintiffs in this case, Milton O'Bryant, Leonard Hendon, Jr., Jimmie Cross, Joe Ortiz, and Marvin Rasco, were certified law enforcement and police officers for the City of Midland. O'Bryant brought two prior lawsuits against the City that are pertinent to this case. In the first, O'Bryant sued in federal court alleging violations of the Americans with Disabilities Act (ADA). O'Bryant voluntarily dismissed that suit. About a year later, the City notified O'Bryant and seven other police officers (who included the plaintiffs) that their duties were slated to be reclassified as civilian positions within three months. Each officer was given the option of: (1) staying in his present position with reclassification as a civilian; (2) applying for a transfer to another position within the police department and continuing in the status of police officer; or (3) applying for a transfer to a civilian position in other City departments. If an officer chose a civilian position, then the pay and benefits would be less. The City also required its police officers to demonstrate greater physical abilities than it had in the past.

After these and other changes within the police department were announced but before they took effect, O'Bryant filed a second suit, and Hendon, Cross, Ortiz, and Rasco later joined as plaintiffs. That suit was filed in state court seeking to enjoin the City's alleged violations of the ADA and the Texas Commission on Human Rights Act. The plaintiffs voluntarily dismissed that action.

The City proceeded to reclassify many positions that police officers had held, and each of the plaintiffs was affected. Two of the plaintiffs, O'Bryant and Cross, were working in the telephone response unit and were reclassified as civilians. Cross suffered from a degenerative arthritic condition, and O'Bryant had previously injured his back and was under physician's orders to limit physical activity. Two other plaintiffs, Rasco and Ortiz, were trans-

---

1. According to a Suggestion of Death filed in this matter on August 26, 1999, Cross died on July 20, 1999, while this appeal was pending. Plaintiff's counsel indicates in plaintiff's mo- tion for rehearing that it is therefore inappropriate to remand Cross's claim for equitable reinstatement. Accordingly, we hereafter address only O'Bryant's reinstatement claim.

ferred to evening shifts as patrol officers when their respective positions in the evidence room and in the telephone response unit were reclassified as civilian positions. Rasco suffered from heart and lung disease, and Ortiz has an artificial leg prostheses. Both men requested transfer to another position with police officer status, and patrol duty was the second choice of assignment for both. Plaintiff Hendon, who had no disability, was transferred to an evening patrol after his position in crime analysis became a civilian one. A few months after these reclassifications took effect, the plaintiffs brought this suit against the City and later added as defendants Chief of Police Richard L. Czech, and another police officer, J.W. Marugg, in their official and individual capacities.

The plaintiffs alleged that the reclassifications were in retaliation for filing the two prior suits. Rasco and Ortiz asserted that because of their disabilities, their personal safety was endangered when they were transferred to evening patrol shifts instead of less hazardous and less strenuous airport duty. O'Bryant similarly claimed that he was placed in jeopardy by his new assignment as an unarmed, noncommissioned civilian officer who was at times the only person on duty at the police station. The plaintiffs also alleged that the City's new, more stringent physical requirements for police officers were unnecessary and discriminated against the plaintiffs who had disabilities. A number of other acts of discrimination and retaliation were alleged by all five plaintiffs. Their theories of recovery included violations of the Texas Labor Code, intentional infliction of emotional distress, breach of an alleged duty of good faith and fair dealing, tortious interference with contract, and violations of the due course of law and free speech provisions of the Texas Constitution. The plaintiffs also sought an injunction restoring them to their original positions with the status and benefits of police officers.

The defendants' responses to the factual allegations are detailed by the court of appeals. 949 S.W.2d at 411. Briefly summarized, they were that the City faced budgetary constraints and that there were limited human and monetary resources to meet an increased need for law enforcement services. Chief of Police Czech stated in an affidavit that in light of these circumstances, he filled positions formerly held by police officers with civilians. There was also evidence that the City revised the job requirements for police officers in response to the enactment of the Americans With Disabilities Act.

The City, Czech, and Marugg moved for summary judgment asserting official and sovereign immunity, that an implied duty of good faith and fair dealing does not arise in an employment agreement, that none of the defendants' actions constituted intentional infliction of emotional distress, that there is no private cause of action for damages under the Texas Constitution, that the City's employees could not as a matter of law interfere with its employment contracts with the plaintiffs, and that there had been no violations of the Texas Labor Code. The trial court granted summary judgment for all defendants on all claims without specifying the grounds. The plaintiffs appealed. The court of appeals affirmed in part, reversed in part, and vacated the trial court's judgment in part. 949 S.W.2d at 417.

The court of appeals held that the defendants were entitled to summary judgment on the tortious interference claims. *Id.* at 415. The court also held that the plaintiffs were not entitled to money damages in the form of back pay for alleged constitutional violations. *Id.* at 414. The court of appeals concluded, however, that reinstatement was available as a remedy for the alleged constitutional violations and that summary judgment on that claim for relief was inappropriate. *Id.* at 414–15. The court of appeals also reversed the trial court's judgment with regard to official immunity, sovereign immunity, and intentional infliction of emotional distress on the

basis that there were fact issues to be resolved. *Id.* at 413, 416. The court of appeals likewise reversed the trial court's judgment with regard to the plaintiffs' claim that the City had breached a duty of good faith and fair dealing. The court reasoned that the City had failed to negate that it owed such a duty to the plaintiffs. *Id.* at 416. Finally, the court of appeals held that the trial court did not have jurisdiction of the Labor Code claims because the plaintiffs had failed to exhaust their administrative remedies. *Id.* at 417. The court of appeals accordingly vacated the summary judgment with regard to the Labor Code claims. *Id.*

The City and the individual defendants filed a petition for review in this Court, which we granted. Because of our disposition of the issues regarding good faith and fair dealing and intentional infliction of emotional distress, we do not consider any of the issues raised regarding official immunity.

We turn first to the court of appeals' holding that the City was not entitled to summary judgment on the plaintiffs' claim that it breached a duty of good faith and fair dealing.

## II

■ The City contends that no cause of action exists in Texas for breach of a duty of good faith and fair dealing in the context of an employer/employee relationship. This Court has never decided the question. Courts in other jurisdictions that have considered the issue have reached varying conclusions.

In decisions that have considered employment at-will, the holdings seem to fall within one or more of several broad categories: 1) an employee cannot be terminated if to do so would violate public policy;[2] 2) there is an implied covenant of good faith and fair dealing not to impair a right to receive a benefit an employee has already earned;[3] 3) there is a general implied covenant of good faith and fair dealing;[4] 4) there is an implied covenant of good faith and fair dealing, but any

2. *See Era Aviation, Inc. v. Seekins*, 973 P.2d 1137, 1139 (Alaska 1999); *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 710 P.2d 1025, 1033 (1985) (en banc); *Smith v. American Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 683, 684 (1991); *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373, 376 (1988) (in bank); *Crawford Rehabilitation Servs., Inc. v. Weissman*, 938 P.2d 540, 547 (Colo.1997); *Magnan v. Anaconda Ind., Inc.*, 193 Conn. 558, 479 A.2d 781, 789 (1984); *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 652 P.2d 625, 631 (1982); *Hummer v. Evans*, 129 Idaho 274, 923 P.2d 981, 986–87 (1996) (holding that cause of action is for breach of contract not tort); *Stratton v. Chevrolet Motor Div.*, 229 Neb. 771, 428 N.W.2d 910, 914 (1988) (holding that there is no implied covenant of good faith or fair dealing unless an employee is deprived of constitutional or statutory rights); *Howard v. Dorr Woolen Co.*, 120 N.H. 295, 414 A.2d 1273, 1274 (1980) (holding that although public policy prohibits discharge under some circumstances, discharge on the basis of sickness or age does not fall in that narrow category); *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 416 S.E.2d 166, 173 (1992); *Gilmore v. Enogex, Inc.*, 878 P.2d 360, 363 (Ok.1994); *Ludwick v. This Minute*

*of Carolina, Inc.*, 287 S.C. 219, 337 S.E.2d 213, 216 (1985); *Breen v. Dakota Gear & Joint Co.*, 433 N.W.2d 221, 223 (S.D.1988); *Heslop v. Bank of Utah*, 839 P.2d 828, 836 (Utah 1992); *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 685 P.2d 1081, 1089 (1984) (en banc); *Brockmeyer v. Dun & Bradstreet*, 113 Wis.2d 561, 335 N.W.2d 834, 840 (1983) (holding that employee cannot be fired for refusing to violate the constitution or a statute).

3. *See Era Aviation, Inc. v. Seekins*, 973 P.2d 1137, 1139 (Alaska 1999); *French v. Jadon, Inc.*, 911 P.2d 20, 24 (Alaska 1996); *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 710 P.2d 1025, 1040 (1985); *Blank v. Chelmsford Ob/Gyn, P.C.*, 420 Mass. 404, 649 N.E.2d 1102, 1105 (1995); *Garcia v. UniWyo Fed. Credit Union*, 920 P.2d 642, 646 (Wyo.1996) (holding that in order for there to be a breach of an implied covenant, employment relationship must be a long-term coupled with a discharge calculated to avoid benefits or commissions).

4. *See DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436, 444 (Del.1996); *Logan v. Yellowstone County*, 263 Mont. 218, 868 P.2d 565, 567 (1994); *Gates v. Life of Mont. Ins.*

damages are limited to a contract measure, not a bad faith, tort measure;[5] or 5) there is no implied covenant of good faith and fair dealing.[6] A few courts also suggest that the terms of an employee handbook can create a similar obligation that limits the at-will nature of the employment.[7]

In the relatively few cases in which the employment agreement at issue was not

at-will, the decisions seem to fall into the following categories: 1) there is only a cause of action for breach of an express covenant;[8] 2) there is an implied covenant of good faith and fair dealing not to nullify the benefits of the contract;[9] 3) there is no covenant of good faith and fair dealing in a "just cause" contract because the fact-finder will decide what is or is not just

Co., 205 Mont. 304, 668 P.2d 213, 214–15 (1983) (upholding award of punitive damages for breach of implied covenant of good faith in employment relationship); *Peck v. Imedia, Inc.*, 293 N.J.Super. 151, 679 A.2d 745, 753 (App.Div.1996); *Somers v. Somers*, 418 Pa.Super. 131, 613 A.2d 1211, 1213–14 (1992); *Hooks v. Gibson*, 842 S.W.2d 625, 628 (Tenn. Ct.App.1992); cf. *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 441 (Del. 1996).

**5.** See *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373, 401 (1988) (in bank).

**6.** See *Hamblen v. Danners, Inc.*, 478 N.E.2d 926, 929 (Ind.App.1985); *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 220 (Iowa 1996); *Morriss v. Coleman Co.*, 241 Kan. 501, 738 P.2d 841, 851 (1987); *Bard v. Bath Iron Works Corp.*, 590 A.2d 152, 156 (Me.1991); *Suburban Hosp., Inc. v. Dwiggins*, 324 Md. 294, 596 A.2d 1069, 1076–77 (1991); *Hammond v. United of Oakland, Inc.*, 193 Mich.App. 146, 483 N.W.2d 652, 655 (1992); *Michaelson v. Minnesota Min. & Mfg. Co.*, 474 N.W.2d 174, 181 (Minn.App.1991); *Hartle v. Packard Elec.*, 626 So.2d 106, 110 (Miss.1993); *Neighbors v. Kirksville College of Osteopathic Med.*, 694 S.W.2d 822, 824 (Mo.App.1985); *Melnick v. State Farm Mut. Auto. Ins. Co.*, 106 N.M. 726, 749 P.2d 1105, 1109–10 (1988) (recognizing no such exception in at-will case and refusing to create one where there is an express employment contract); *Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. 434, 872 P.2d 852, 856 (1994); *Nice v. Combustion Eng'g, Inc.*, 193 A.D.2d 1088, 599 N.Y.S.2d 205, 206 (N.Y.App.Div.1993); *Hillesland v. Federal Land Bank Assoc.*, 407 N.W.2d 206, 214 (N.D. 1987); *Edelman v. Franklin Iron & Metal Corp.*, 87 Ohio App.3d 406, 622 N.E.2d 411, 414–15 (1993); *Sheets v. Knight*, 308 Or. 220, 779 P.2d 1000, 1008 (1989); *Breen v. Dakota Gear & Joint Co.*, 433 N.W.2d 221, 224 (S.D. 1988) (conceptually separating the public policy exception from its rejection of the implied covenant); *Heslop v. Bank of Utah*, 839 P.2d 828, 840 (Utah 1992) (rejecting implied cove-

nant of good faith and fair dealing but would recognize a cause of action if termination violated a clear, substantial and significant public policy); *Mason v. Richmond Motor Co.*, 625 F.Supp. 883, 889–90 (E.D.Va.1986) (concluding that Virginia had not yet implied a covenant of good faith and fair dealing in employment relationships); *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 665 A.2d 580, 586 (1995); *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 685 P.2d 1081, 1086 (1984) (en banc) (rejecting an implied covenant of good faith and fair dealing but recognizing a cause of action where the discharge contravenes a clear mandate of public policy); *Miller v. Massachusetts Mut. Life Ins. Co.*, 193 W.Va. 240, 455 S.E.2d 799, 803 (1995); *Brockmeyer v. Dun & Bradstreet*, 113 Wis.2d 561, 335 N.W.2d 834, 838 (1983); see also *Salisbury v. Stone*, 518 A.2d 1355, 1360 (R.I.1986) (holding that when at-will status was statutory, courts had no power to imply a covenant of good faith and fair dealing).

**7.** See *Breen v. Dakota Gear & Joint Co.*, 433 N.W.2d 221, 223 (S.D.1988) (exception to at-will where employer fails to comply with promulgated termination procedures); *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 685 P.2d 1081, 1087–88 (1984) (en banc) (exception where manual creates expectation of specific treatment in specific situations); see also *Nice*, 193 A.D.2d 1088, 599 N.Y.S.2d 205, 206–07 (1993) (holding that even an at-will employer's right to terminate might be limited by an express provision in the employer's personnel handbook).

**8.** See *Decker v. Browning–Ferris Indus., Inc.*, 903 P.2d 1150, 1156–57 (Colo.Ct.App.1995) (holding that recovery of non-economic damages could not stand even though there was a breach of an express agreement to treat employees fairly).

**9.** See *Smith v. Meridian Joint Sch. Dist.*, 128 Idaho 714, 918 P.2d 583, 590 (1996); *K Mart Corp. v. Ponsock*, 103 Nev. 39, 732 P.2d 1364, 1369 (1987).

cause;[10] or 4) there is a covenant of good faith and fair dealing in a "just cause" contract or a contract for a definite term.[11]

This Court has held that not every contractual relationship creates a duty of good faith and fair dealing. *See Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1,* 908 S.W.2d 415, 418 (Tex.1995). We have "specifically rejected the implication of a general duty of good faith and fair dealing in all contracts." *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 595 n. 5 (Tex.1992) (citing *English v. Fischer,* 660 S.W.2d 521, 522 (Tex.1983)). *But see* RESTATEMENT (SECOND) OF CONTRACTS § 205 (1979) (providing that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement"). We have had the question of whether to impose a duty of good faith and fair dealing on at-will employment relationships before us on at least one occasion. In *Winters v. Houston Chronicle Publishing Co.,* 795 S.W.2d 723, 724–25 n. 2 (Tex.1990), we were asked to imply a duty of good faith and fair dealing in all at-will employee relationships, but we did not reach the issue because it was abandoned at oral argument.

As the plaintiffs recognize, this Court has imposed an actionable duty of good faith and fair dealing only when there is a special relationship, such as that between an insured and his or her insurance carrier. *See Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex. 1987). We have held that a special relationship exists in the insurance context because of "the parties' unequal bargaining power and the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their in-

sureds' misfortunes in bargaining for settlement or resolution of claims." *Id.* The Court concluded in *Arnold* that without a cause of action for breach of a duty of good faith and fair dealing, "insurers can arbitrarily deny coverage and delay payment of a claim" and that an insurer has "exclusive control over the evaluation, processing, and denial of claims." *Id.*

But the elements which make the relationship between an insurer and an insured a special one are absent in the relationship between an employer and its employees. First, in Texas, the employment relationship is generally at-will unless the parties enter into an express agreement that provides otherwise. Second, insurance contracts are typically much more restrictive than employment agreements. If an insured suffers a loss, he cannot simply contract with another insurance company to cover that loss. By contrast, an employee who has been demoted, transferred, or discharged may seek alternative employment. *See, e.g., Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373, 390 (1988).

Moreover, this Court has thus far recognized only one limited common-law exception to the at-will employment doctrine. We held in *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733 (Tex.1985), that an employer may not discharge an employee for the sole reason that the employee refused to perform an illegal act that carried criminal penalties. *Id.* at 735. We have not, however, recognized other common-law exceptions to the employment at-will doctrine. We declined to recognize a common-law whistleblower cause of action in *Winters,* 795 S.W.2d at 724–25, and reaf-

**10.** *See Hammond v. United of Oakland, Inc.,* 193 Mich.App. 146, 483 N.W.2d 652, 655 (1992).

**11.** *See Barbe v. A.A. Harmon & Co.,* 705 So.2d 1210, 1220 (La.App.1998); *Stratton v. Chevrolet Motor Div.,* 229 Neb. 771, 428 N.W.2d 910, 914 (1988) (dicta); *Shoen v. Amerco, Inc.,* 111 Nev. 735, 896 P.2d 469, 476–77 (1995) (hold-

ing that there is an implied covenant of good faith and fair dealing in a lifetime employment contract); *K Mart Corp. v. Ponsock,* 103 Nev. 39, 732 P.2d 1364, 1369 (1987); *Bourgeous v. Horizon Healthcare Corp.,* 117 N.M. 434, 872 P.2d 852, 857 (1994) (holding that tort remedies are not available for breach).

firmed our decision not to do so in *Austin v. Healthtrust, Inc.*, 967 S.W.2d 400 (Tex. 1998). We did so primarily on the basis that the Legislature has been active in crafting whistleblower statutes that often vary from one another in material respects. The adoption of a general common-law whistleblower cause of action would have undercut the many distinctions drawn by the Legislature among the various statutory whistleblower causes of action. *Austin*, 967 S.W.2d at 402.

Similarly, we decline to impose a duty of good faith and fair dealing on employers in light of the variety of statutes that the Legislature has already enacted to regulate employment relationships.[12] Recognizing a new common-law cause of action based on the duty plaintiffs advocate would tend to subvert those statutory schemes by allowing employees to make an end-run around the procedural requirements and specific remedies the existing statutes establish.

Here, for instance, plaintiffs have alleged claims for discrimination and retaliation under sections 21.051 and 21.055 of the Texas Labor Code. TEX. LAB.CODE §§ 21.051, 21.055. But the court of appeals determined that plaintiffs had failed to exhaust their administrative remedies as required by the Labor Code, and that therefore the trial court did not have jurisdiction over those claims. 949 S.W.2d at 417. Plaintiffs do not contest this determination. Rather, they ask us to excuse them from the Labor Code's administrative requirements by creating a common-law cause of action for the same actions of the City on which they based their suit under the Labor Code. We decline to do so.

■ In holding that there is no duty of good faith and fair dealing in the employment context, we perceive no distinction between government and private employers, inasmuch as both types of employers are subject to applicable laws, regulations, and contractual agreements. Nor do we see any meaningful basis to distinguish between employment at-will and employment governed by an express agreement. A court-created duty of good faith and fair dealing would completely alter the nature of the at-will employment relationship, which generally can be terminated by either party for any reason or no reason at all, and we accordingly decline to change the at-will nature of employment in Texas. If, as plaintiffs argue, they could only be terminated or transferred for reasons of "merit," that fact militates against imposing a common-law duty of good faith and fair dealing because such a contractual limitation would afford more rights to the plaintiffs than at-will employees possess. Moreover, such a duty would be unnecessary when there are express contractual limits on an employer's right to terminate.

Accordingly, we hold that the City of Midland was entitled to summary judgment on the plaintiffs' claims that the defendants breached a duty of good faith and fair dealing. We turn to the claims for intentional infliction of emotional distress.

### III

■ The elements of intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress that the plaintiff suffered was severe. *See Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex.1999) (citing *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993)). Courts must determine as a threshold matter whether " 'the defendant's conduct may reasonably be re-

12. *See, e.g.,* TEX. AGRIC. CODE § 125.013(b); TEX. CIV. PRAC. & REM.CODE § 122.001; TEX. ELEC. CODE §§ 161.007, 276.001; TEX. FAM.CODE § 158.209; TEX. GOV'T.CODE §§ 431.006, 554.002; TEX. HEALTH & SAFETY CODE §§ 81.102, 242.133, 502.017, 592.015; TEX. LAB.CODE §§ 21.051, 21.055, 52.041, 101.052, 411.082, 451.001; TEX. LOC. GOV'T CODE § 160.006; TEX. OCC.CODE §§ 103.001, 160.003, 160.007, 301.419.

garded as so extreme and outrageous as to permit recovery.'" *Id.* at 216 (quoting *Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993) (quoting in turn RESTATEMENT (SECOND) OF TORTS § 46 cmt. h (1965)). To be extreme and outrageous, conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Mattix–Hill v. Reck,* 923 S.W.2d 596, 597 (Tex.1996) (quoting *Twyman,* 855 S.W.2d at 621).

Our recent decision in *GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605 (Tex.1999) is instructive. As in this case, the conduct that was alleged to constitute intentional infliction of emotional distress occurred in an employment context. We held that evidence of a supervisor's conduct was legally sufficient to support the jury's finding of intentional infliction of emotional distress. The Court cautioned, however, that this tort "does not lie for ordinary employment disputes," and that the kind of extreme conduct necessary to raise a fact question of intentional infliction of emotional distress in the workplace "exists only in the most unusual of circumstances." *Id.* at 612–13. That admonition grew out of the recognition that employers supervise, review, criticize, demote, transfer, discipline, and terminate employees. *Id.* at 612. This is often stressful and unpleasant for an employee and at times may even be unwarranted. *See id.* Nevertheless, "an employer must have latitude to exercise these rights in a permissible way, even though emotional distress results." *Id.*

In this case, the City's decision to reclassify positions formerly held by police officers as civilian positions does not rise to the level of extreme and outrageous conduct that is required for the tort of intentional infliction of emotional distress. *Cf. Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995) (holding that an employer acted within its rights in investigating reasonably credible allegations that an employee had stolen a wreath); *Wornick Co. v. Casas,* 856 S.W.2d 732, 735 (Tex.1993) (holding that employer's conduct in firing employee for allegedly possessing incriminating information and in escorting her off the premises with a security guard was not extreme and outrageous conduct). Even the wrongful transfer, failure to promote, or termination of an employee does not, standing alone, constitute intentional infliction of emotional distress. *See Brewerton,* 997 S.W.2d at 216; *Southwestern Bell Mobile Sys., Inc. v. Franco,* 971 S.W.2d 52, 54 (Tex.1998). It follows that an employer's decision to revise job descriptions or to change the nature of and compensation for certain positions is not "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Mattix–Hill v. Reck,* 923 S.W.2d 596, 597 (Tex.1996) (quoting *Twyman,* 855 S.W.2d at 621). The reclassifications by the City are the type of business or employment decisions that an employer must have the latitude to make. *See GTE Southwest,* 998 S.W.2d at 612; *Randall's Food Markets,* 891 S.W.2d at 644 (discussing managerial functions necessary to the ordinary operation of a business organization).

Accordingly, plaintiffs have failed to raise a fact question about "the existence of some conduct that brings the dispute outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct." *GTE Southwest,* 998 S.W.2d at 613. This is particularly so for Rasco and Ortiz because, although they now complain of being assigned to evening patrol, it is undisputed that both specified a patrol position as their second choice for transfer.

The trial court did not err in granting summary judgment for the defendants on the claims for intentional infliction of emotional distress.

## IV

The final claim at issue is that of O'Bryant for reinstatement as a police offi-

cer to remedy alleged violations of the due course of law and free speech provisions of the Texas Constitution. *See* TEX. CONST. art. 1, §§ 8, 19. From the briefs filed in this Court, it does not appear that the other plaintiffs seek reinstatement based on violations of the Texas Constitution.

The court of appeals concluded that our decision in *City of Beaumont v. Bouillion*, 896 S.W.2d 143 (Tex.1995), did not foreclose an "equitable remedy *per se*," and remanded the reinstatement claims to the trial court without further discussion. 949 S.W.2d at 414–15. The City does not ask us to decide whether, as a legal proposition, reinstatement can ever be a remedy for violations of the due course of law or free speech provisions of the Texas Constitution. The City contends only that it is impossible to reinstate O'Bryant because he is not physically capable of performing the duties of a police officer. We do not reach even that narrow issue because of the procedural posture of this case.

The defendants' motion for summary judgment did not address the reinstatement claims or whether there had been constitutional violations. The motion asserted only that damages could not be recovered for violations of the Texas Constitution. The trial court accordingly erred when it granted summary judgment for the defendants on all claims. *See Chessher v. Southwestern Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex.1983). But, the court of appeals did not reverse the trial court on that basis. The court of appeals instead held that reinstatement was available as a remedy if there were violations of the Texas Constitution and remanded all plaintiffs' claims for reinstatement to the trial court. Whether reinstatement can be a remedy for violations of the Texas Constitution is not before this Court, and accordingly, we express no view on that question. Because the trial court should not have granted summary judgment on an issue that was not presented, the judgment of the court of appeals reversing and remanding the reinstatement issue to the

trial court was correct with regard to O'Bryant.

\* \* \* \* \*

For the reasons considered above, we affirm the judgment of the court of appeals in part, reverse that judgment in part, and remand O'Bryant's claim for reinstatement to the trial court for further proceedings consistent with this opinion.