**Don GRAY, Plaintiff,**

v.

**SEARS, ROEBUCK & CO., INC., Defendant.**

**No. Civ.A. H–98–2211.**

United States District Court, S.D. Texas, Houston Division.

Jan. 5, 2001.

Lawrence M. Chamberlin, Houston, TX, for plaintiff.

George Allen Butler, Clark, West, Keller, Butler & Ellis, Dallas, TX, for defendant.

*MEMORANDUM AND ORDER*

WERLEIN, District Judge.

Pending is Defendant's Motion for Summary Judgment (Document No. 25). After carefully considering the motion, response, reply, summary judgment evidence, and applicable law, the Court concludes that Defendant's motion for summary judgment (Document No. 25) should be granted.

## I. *Background*

Defendant Sears, Roebuck & Co., Inc. ("Sears") has employed Plaintiff Don Gray ("Gray") for over thirty years. Gray has diabetes and, on two occasions over the past seven years, Gray's diabetes required him to take medical leaves of absence. Alleging that Sears unlawfully demoted him after he returned from these leaves, Gray filed this action against Sears under the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act of 1990 ("ADA"), and the Age Discrimination in Employment Act ("ADEA"). In addition, Gray also asserts that Sears intentionally and negligently inflicted emotional distress upon him and that Sears breached its duty to deal with its employees fairly.

In October 1993, Gray was working as the manager in the Brand Central Department in Sears's store at Willowbrook Mall in Houston. During that month, Gray met with his supervisor and store manager, Terry Kendrick ("Kendrick"), who disciplined Gray for what Kendrick believed was a "lack of organization" in Gray's department. *See* Document No. 26, Exhibit B at ¶ 3. Gray believed the reprimand was unfairly given. *See* Document No. 31, Exhibit 8 at 1–2. Gray also testified that, during the meeting, "Kendrick stated that he knew I had health problems, but the company was a company of figures and results and that I should take a medical leave or run the risk of being terminat-

ed."[1] *Id.* at 2. A few weeks later, Gray requested a leave of absence in order to resolve his health problems. *See* Document No. 26, Exhibit A–3. Gray's request was granted. *See* Document No. 26, Exhibit B at ¶ 3. Kendrick placed another employee in Gray's position several weeks after Gray began his leave. *See id.* at ¶ 4.

In January 1995, Gray returned to Kendrick with a doctor's note clearing Gray to return to work. *See id.* Since Gray's previous position had been filled by another employee, Kendrick assigned Gray to work as an Auto Center Manager in the same Willowbrook store. *See id.* While Gray worked in this position, Sears restructured its operations, separating its auto centers from the main department stores and providing its auto centers with a separate management structure. *See id.* at ¶ 5. Consequently, Kendrick no longer had supervisory authority over Gray. *See id.*

In April 1996, Gray met with his new supervisor, Kelly Craig ("Craig"), and requested to take a second medical leave. *See* Document No. 26, Exhibit C at ¶ 3. At the same meeting, Craig spoke with Gray about "several deficiencies" in the operation of the Auto Center. *See id.* Gray's request to take a medical leave was granted, and Craig assigned another employee, Lisa Adame ("Adame"), to Gray's position as Auto Center Manager in May 1996. *See id.*

The parties dispute the events surrounding Gray's request to return to work from his second leave of absence. According to Gray, he contacted Bob Kelsey ("Kelsey"), Craig's supervisor, "right around" April 1, 1997. *See* Document No. 26, Exhibit A at 210. Kelsey told Gray that he could not return to his old position as Auto Center Manager in the Willowbrook store because Adame still held the position. *See id.* at 211; Document No. 31, Exhibit 8 at 4.

---

1. In contrast to Gray's testimony, Kendrick testified that "I asked Mr. Gray if he was physically able to perform his duties and he responded that he did not think he was. I asked if he had considered an illness leave of absence, and suggested he discuss it with his doctor." Document No. 26, Exhibit B at ¶ 3.

Gray also testified that Kelsey "continued through the next hour trying to talk me into going into sales, working part-time and getting another job outside the company, or quitting altogether ..." Document No. 31, Exhibit 8 at 4.

After Gray continued to request to return to work full-time at Sears, Kelsey directed Gray to contact his old supervisor, Craig. When Gray did so, according to Gray, Craig "immediately" responded that he had no openings. *See* Document No. 31, Exhibit 8 at 4. However, approximately eleven days later, Craig informed Gray "there was a new opening," *id.* at 5, in the manager position at the Deerbrook Auto Center and offered the position to Gray. The Deerbrook Auto Center is also in the Houston area, approximately twenty miles away from the Willowbrook Auto Center. The previous manager at the Deerbrook Auto Center was Avais Morris ("Morris"), who left his position in order to replace Adame in Gray's old position as manager of the Willowbrook Auto Center. According to Gray, Morris replaced Adame sometime after Gray contacted Kelsey and before Craig offered the Deerbrook position to Gray.[2]

Gray accepted the position at the Deerbrook store. There is no summary judgment evidence that Gray is not still employed as manager at the Deerbrook store.

## II. *The Summary Judgment Standard*

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the initial burden of informing the district court of the basis for the motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which the moving party believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *See id.* at 2553–54. A party opposing a properly-supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing the existence of a genuine issue for trial. *See Anderson*, 106 S.Ct. at 2514–15. If the adverse party does not respond in this manner, summary judgment, if appropriate, "shall be entered against the adverse party." FED.R.CIV.P. 56(e). The nonmovant "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir.1992).

In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. *See Anderson*, 106 S.Ct. at 2513–14. All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "If the record, viewed in this light, could

---

**2.** In contrast to Gray's testimony, Craig and Kelsey averred that they had given the Willowbrook job to Morris in mid-March. *See* Document No. 26, Exhibit C at ¶ 4; *id.*, Exhibit D at ¶ 4. Consequently, Kelsey and Craig testified that the Deerbrook position was the only auto center position to become available after Gray requested to return from his medical leave. *See* Document No. 26, Exhibit C at ¶ 5; *id.*, Exhibit D at ¶ 5.

not lead a rational trier of fact to find" for the nonmovant, summary judgment is proper. *Kelley v. Price–Macemon, Inc.,* 992 F.2d 1408, 1413 (5th Cir.1993) (*citing Matsushita,* 106 S.Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* (*citing Anderson,* 106 S.Ct. at 2511).

Finally, even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson,* 106 S.Ct. at 2513. *Accord Veillon v. Exploration Services, Inc.,* 876 F.2d 1197, 1200 (5th Cir.1989); 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2728 (1983).

### III. *Evidentiary Objections*

Defendant's objections to Plaintiff's Response and Appendix of Evidence as a whole (Document No. 33) are OVERRULED. Defendant's objections to Plaintiff's Affidavit (Document No. 33) are OVERRULED.

### IV. *Discussion*

#### A. *Timeliness*

##### 1. *ADA and ADEA claims*

Gray did not timely assert many of his ADA and ADEA claims. Since Texas provides a state administrative mechanism to address complaints of discrimination, both the ADA and the ADEA require Gray to file a charge of discrimination with the EEOC within three hundred days of the alleged violation. *See Conaway v. Control Data Corp.,* 955 F.2d 358, 362 n. 2 (5th Cir.1992) (ADEA); *Dao v. Auchan Hypermarket,* 96 F.3d 787, 789 (5th Cir.1996) (stating that the ADA has incorporated the procedures set forth in 42 U.S.C. § 2000e–5(e)(1)). In this case, Gray filed his charge with the EEOC on October 8, 1997, *see* Document No. 26, Exhibit E, making any allegations concerning events prior to December 12, 1996, untimely.

Gray argues that his allegations concerning events prior to December 12, 1996, are not time barred because the alleged acts were continuing violations. "The core idea of the continuing violations theory ... is that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated ." *Messer v. Meno,* 130 F.3d 130, 135 (5th Cir. 1997) (quoting *Glass v. Petro–Tex Chemical Corp.,* 757 F.2d 1554, 1560–61 (5th Cir.1985)). "Although there is no definitive standard for what constitutes a continuing violation, the plaintiff must demonstrate more than a series of discriminatory acts." *Huckabay v. Moore,* 142 F.3d 233, 239 (5th Cir.1998). Rather, "[h]e must show an organized scheme leading to and including a present violation ... such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action...." *Id.* (internal citations omitted).

Whether continuing violations exist "of necessity, turns on the facts and context of each particular case." *Berry v. Board of Supervisors of L.S.U.,* 715 F.2d 971, 981 (5th Cir.1983). "The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights." *Glass v. Petro–Tex Chemical Corp.,* 757 F.2d 1554, 1561 (5th Cir.1985). In making this determination, a court may consider the following three non-exclusive factors: (1) subject matter (i.e., whether the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation); (2) frequency (i.e., whether the acts were recurring or in the nature of an isolated employment decision); and (3) degree of permanence (i.e., whether the act should have triggered an employee's awareness of and duty to assert his rights). *See Huckabay v. Moore,* 142 F.3d 233, 239 (5th Cir. 1998).

Even assuming that the alleged acts were all motivated by age and disability discrimination, Gray has not stated continuing violations because the alleged acts were isolated employment decisions, the circumstances of which should have put Gray on notice that he needed to assert his rights. For instance, Kendrick's alleged 1993 threat (that Gray take medical leave or risk termination) combined with Gray's belief that Kendrick had unfairly evaluated his performance and Kendrick's subsequent replacement of Gray with a "substantially younger person [with] better health," Document No. 1, Exhibit 2 at 2, should have alerted Gray that a *prima facie* cause of action for age and disability discrimination had accrued. Similarly, once Gray returned from his leave, his alleged 1995 demotion to the position of auto center manager (which Gray testified lowered his job grade and reduced his yearly incentive and stock options, *see* Document No. 31, Exhibit 8 at 4) was a discrete event that should have prompted Gray to assert his rights. *See Huckabay,* 142 F.3d at 240 ("[D]emotion is the sort of discrete and salient event that should put an employee on notice that a cause of action has accrued."). Consequently, with the exception of his allegations concerning his April 1997 return to work, Gray's ADA and ADEA claims are time-barred.

### 2. *FMLA and Intentional Infliction of Emotional Distress Claims*

The statute of limitations for FMLA claims is three years for willful violations, *see* 29 U.S.C. § 2617(c)(2), and two years for all other violations, *see* 29 U.S.C. § 2617(c)(1). Gray filed this action on June 5, 1998, and even if Gray's petition is construed to assert willful FMLA violations, the statute of limitations has run on all of Gray's FMLA claims except those arising from Sears's refusal to return Gray to his manager position at the Willowbrook Auto Center.[3] Likewise, the statute of

limitations for Gray's intentional infliction of emotional distress claims is two years, and bars Gray from asserting those of his claims arising before June 5, 1996 (i.e., all claims except those concerning his April 1997 return to work). *See Muckelroy v. Richardson Independent School Dist.,* 884 S.W.2d 825, 829 (Tex.App.—Dallas 1994) ("[T]he two-year statute [of limitations] applies to claims of intentional infliction of emotional distress").

### B. *FMLA*

When an eligible employee has a serious health condition that makes the employee unable to perform the functions of his position, the Family and Medical Leave Act provides that the employee is entitled to a "total of 12 workweeks of leave during any 12–month period." 29 U.S.C. § 2612(a)(1)(D). If the employee is unable to return to work after the expiration of the twelve-week period, the employer is not obligated under the FMLA to restore the employee to his position. *See McGregor v. Autozone, Inc.,* 180 F.3d 1305, 1308 (11th Cir.1999) ("Because ... plaintiff was absent for more than the protected period of time, she did not have a right to be restored to her prior or similar position.") 29 C.F.R. § 825.214(b) (stating that, at the end of the twelve-week leave, "[i]f the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA."). Although the parties in this case dispute the day on which Gray began his leave, the dispute is immaterial because, under the reading of the facts most favorable to Gray, he began his FMLA leave of absence on November 11, 1996 (when Sears designated his leave as FMLA leave) and did not request to return to work until March 1997, after the

---

3. Although the events surrounding Gray's request to take his second medical leave of absence fall within this three year period,

none of Gray's FMLA claims arise from those events.

twelve-week FMLA period had expired. Because Gray was absent for more than the protected twelve-week period, Sears is entitled to summary judgment on Gray's FMLA claim.

### C. *Americans with Disabilities Act of 1990*

■ "The ADA prohibits an employer from discriminating against a 'qualified individual with a disability' on the basis of his disability." *Ivy v. Jones*, 192 F.3d 514, 516 (5th Cir.1999). "One may establish a claim of discrimination under the ADA either by presenting direct evidence or by using the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green.*" *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir.1999). Under the *McDonnell Douglas* test, "a plaintiff must first make out a *prima facie* case of discrimination by showing that: (1) he or she suffers from a disability; (2) he or she is qualified for the job; (3) he or she was subject to an adverse employment action; and (4) he or she was replaced by a non-disabled person or was treated less favorably than non-disabled employees." *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 623 n. 3 (5th Cir.2000) (quoting *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir.1995)).

■ Gray's prima facie case fails because he has not shown that he has a "disability," as that term is defined by the ADA. "The ADA defines 'disability' as: (1) a mental or physical impairment that substantially limits one or more major life activities of an individual, (2) a record of such an impairment, or (3) being regarded as having such an impairment." *Ivy v. Jones*, 192 F.3d 514, 516 (5th Cir.1999); 42 U.S.C. § 12102(2).[4] "[T]he analysis of whether a plaintiff's claimed impairment interferes with a major life activity in such a substantial way as to constitute a disability requires an individualized inquiry." *McInnis v. Alamo Community College Dist.*, 207 F.3d 276, 280 (5th Cir.2000). For example, the Supreme Court has rejected the view that "[a] diabetic whose illness does not impair his or her daily activities [is] ... disabled simply because he or she has diabetes." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 2147, 144 L.Ed.2d 450 (1999).

■ Gray has not produced any evidence that his diabetes substantially limits one or more of his major life activities. "A 'major life activity,' as defined by the EEOC regulations, includes such functions as 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *McInnis v. Alamo Community College Dist.*, 207 F.3d 276, 280 (5th Cir.2000) (quoting 29 CFR § 1630.2.) "To determine whether an individual is substantially limited in a major life activity other than working, the court looks to whether that person can perform the normal activities of daily living." *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1120 (5th Cir.1998). "With respect to the major life activity of working, 'substantially limits' is defined as 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.'" *Deas v. River West, L.P.*, 152 F.3d 471, 481 (5th Cir.1998) (quoting 29 C.F.R. § 1630.2(j)(3)(i)).

■ Gray's only evidence of any limits on his activities is that he has to take additional medicine for his diabetic condition and that he has to avoid strenuous activity, although he can walk. See Document No. 31, Exhibit 8 at 5.[5] However, no

---

4. Gray has not argued in this case either that there was a record of his impairment or that Sears regarded him as having an impairment.

5. Gray also states that he has experienced "episodes of low blood sugar" since February 2000 and began to take new medication after May 1999, but this evidence is irrelevant since Gray's disability must be evaluated as it existed at the time of the alleged adverse employment decision in April 1997. *See Cash v.*

reasonable trier of fact could find that these restrictions "substantially limit" one or more of Gray's "major" life activities, particularly in light of Gray's own admissions during his deposition:

Q. Did you have to adjust your physical activity because of your diabetes or your hypertension?

A. No, not that I know of.

Q. Were you able to exercise regularly?

A. Yeah. I did pretty good. I was walking and stuff, a lot of walking.

Document No. 26, Exhibit A at 51. Gray's need to return to the doctor for additional blood tests and to take medication for his diabetes does not, by itself, permit a finding that Gray was disabled. *See E.E.O.C. v. R.J. Gallagher Co.*, 181 F.3d 645, 655 (5th Cir.1999) (finding that an employee was not disabled even though the employee had to return to the doctor for six monthly chemotherapy treatments). Moreover, the fact that Gray has to avoid some unspecified "strenuous activity" except for walking is not a "substantial" limitation of a "major" life activity. *See Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 643 (2d Cir.1998) (holding that "diminished ability to dig and plant in his garden in the summertime, shovel snow from his driveway, and engage in other physical exercise in the wintertime ... clearly fall outside the range of 'major' life activities"); *Kelly v. Drexel University*, 94 F.3d 102, 106 (3rd Cir.1996) (holding that a plaintiff did not have a disability under the ADA even though plaintiff stated that "he believed that he could not walk 'more than a mile or so' and that he 'certainly couldn't jog.' "). Because Gray has not raised a genuine issue of material fact that his diabetes substantially limited one of his major life activities, his ADA claim fails.

*Smith*, 231 F.3d 1301, 1306 n. 5 (11th Cir. 2000) (not considering evidence that the employee was eventually hospitalized for depression because "the action that [the employee]

### D. *ADEA*

■ Gray argues that Sears discriminated against him because of his age when it did not rehire him in his old position as manager of the Willowbrook Auto Center and instead offered to him the position of manager of the Deerbrook Auto Center. Title 29, United States Code, Section 623(a)(1) prohibits an employer from discriminating against an individual with respect to his "compensation, terms, conditions, or privileges of employment" because of his age. "Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green.* ... " *Russell v. McKinney Hospital Venture,*235 F.3d 219, 221 (5th Cir.2000). "A prima facie case generally requires proof that the plaintiff is within the protected class, that he suffered an adverse employment decision, and some evidence that the employment decision was motivated by unlawful age discrimination." *Ross v. University of Texas at San Antonio*, 139 F.3d 521, 525 (5th Cir.1998).

■ Gray has not raised a genuine issue of material fact that he suffered an adverse employment action. "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. New York City Board of Education,* 202 F.3d 636, 640 (2d Cir.2000); *see also Stockett v. Muncie Indiana Transit System,* 221 F.3d 997, 1001 (7th Cir.2000) (same). In this case, there is no summary judgment evidence that there were any "materially adverse" differences with respect to the "compensation, terms, conditions, or privileges of employment" in the Willowbrook Auto Center manager position that Gray requested and the Deerbrook Auto Center manager posi-

is complaining of occurred in late April and early May of 1998, and we evaluate her disability as manifested at that time.").

tion that Sears offered.[6] *See Brown v. Brody*, 199 F.3d 446, 457 (D.C.Cir.1999) ("[A] plaintiff who is made to undertake or who is denied a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences ... such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm."); *Montandon v. Farmland Industries, Inc.*, 116 F.3d 355, 359 (8th Cir.1997) (holding that an employee did not suffer an adverse action when the employer required the employee to move from Omaha, Nebraska to Denison, Iowa to retain his job because the action "did not entail a change in position, title, salary, or any other aspect of his employment").

 The only summary judgment evidence of any negative consequence arising for Gray from his reemployment to the Deerbrook Auto Center was that Gray faced a longer commute to work. However, an assignment to a position which has equal compensation, terms, conditions, and privileges of employment—but which requires a longer commute—does not constitute an adverse employment action. *See Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 (10th Cir.1998) (applying a "liberal" definition of adverse employment action and holding that a transfer which increased the employee's commute from between five and seven minutes to between thirty and forty minutes was not an adverse employment action); *Grande v. State Farm Mut. Auto. Ins. Co.*, 83 F.Supp.2d 559, 563–64 (E.D.Pa.2000) ("While the court does not minimize the effect of a lengthened commute or feelings of ill-treatment, without some evidence of actual harm to plaintiff's career or some indication that he could not perform the job, these factors do not create a prima facie case."); *Smith v. Alabama Dept. of*

*Public Safety*, 64 F.Supp.2d 1215, 1222 (M.D.Ala.1999) (same); *cf. Spring v. Sheboygan Area School Dist.*, 865 F.3d 883, 886 (7th Cir.1989) (holding that a job reassignment which required the employee to travel farther from home to get to work and which compensated the employee accordingly was not an adverse employment action). Since Gray has not raised a genuine issue of material fact that he suffered an adverse employment action, his age discrimination claim fails.

### E. Intentional Infliction of Emotional Distress

 An intentional infliction of emotional distress claim under Texas law requires proof that "1) the defendant acted intentionally or recklessly, 2) the conduct was 'extreme and outrageous,' 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the resulting emotional distress was severe." *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex.1998). To be extreme and outrageous, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex.1999). A claim for intentional infliction of emotional distress does not lie for ordinary employment disputes. *See id.* at 613. (citation omitted). "Even the wrongful transfer, failure to promote, or termination of an employee does not, standing alone, constitute intentional infliction of emotional distress." *City of Midland v. O'Bryant*, 18 S.W.3d 209, 217 (Tex.2000).

 Even if the employer discriminates on the basis of age or disability, the employer's conduct becomes "extreme and outrageous" only in the "most unusual

---

**6.** Although Gray alleges that the Deerbrook store is smaller than the Willowbrook store and that Deerbrook's size makes it "virtually impossible to [reach] the incentive goals which have always been an integral part of [his] compensation package," Document 1, Exhibit 2 at ¶ 3.10, there is no summary judgment evidence supporting this allegation.

cases." *See Hirras v. National R.R. Passenger Corp.*, 95 F.3d 396, 400 (5th Cir. 1996) ("An employer's conduct, even if a Title VII violation, rises to the level of 'extreme and outrageous' in only 'the most unusual cases.'"); *Walker v. Thompson*, 214 F.3d 615, 628 (5th Cir.2000) ("[A]lthough the appellee's racial harassment of the appellants may have been illegal (we have found there is a genuine issue of material fact with respect to their claim of hostile work environment under Title VII), it does not rise to the level of extreme and outrageous conduct under Texas law."). Moreover, "except in the most unusual cases, an employer's creation of unpleasant and onerous work conditions is not the sort of conduct, as deplorable as it may sometimes be, that constitutes extreme and outrageous conduct." *Ramirez v. Allright Parking El Paso, Inc.*, 970 F.2d 1372, 1376 (5th Cir.1992) (internal quotations omitted). Assigning an employee an excessive workload does not constitute "extreme and outrageous" behavior. *See Brewerton v. Dalrymple*, 997 S.W.2d 212, 216 (Tex. 1999).

 There is no summary judgment evidence that raises a genuine issue of material fact that Sears engaged in extreme and outrageous conduct. Gray has shown that Sears failed to offer to Gray the Willowbrook job and reemployed him as manager at Deerbrook which required an additional commute of some twenty miles, but Gray has offered no evidence to demonstrate that this is an "unusual case" outside the realm of ordinary employment disputes. *Compare Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1144 (5th Cir. 1991) (upholding a jury verdict against an employer who *"intentionally and systematically* set out to humiliate [the plaintiff-employee] in the hopes that he would quit" (emphasis in original), concluding that "what takes this case out of the realm of an ordinary employment dispute is the degrading and humiliating way that [the employee] was stripped of his duties and demoted from an executive manager to an entry level warehouse supervisor with menial and demeaning duties") with *Atkinson v. Denton Pub. Co.*, 84 F.3d 144, 151 (5th Cir.1996) (upholding dismissal of intentional infliction of emotional distress claim arising from employee's termination even though there was a genuine issue of material fact as to whether employee was terminated because of age discrimination). Consequently, Sears is entitled to summary judgment on this claim.

## F. Negligent Infliction of Emotional Distress and Breach of Duty to Deal Fairly With Employees

 Texas law does not recognize a cause of action for negligent infliction of emotional distress. *See Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex.1993) ("[T]here is no general duty not to negligently inflict emotional distress"); *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993) ("[W]e have refused to adopt the tort of negligent infliction of emotional distress"). Likewise, employers in Texas do not owe a general duty of good faith and fair dealing to their employees. *See City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex.2000) ("[W]e decline to impose a duty of good faith and fair dealing on employers in light of the variety of statutes that the Legislature has already enacted to regulate employment relationships. Sears is entitled to summary judgment on these claims.")

## V. Order

For the foregoing reasons, it is hereby

ORDERED that Defendant's Motion for Summary Judgment (Document No. 25) is GRANTED. The claims of Plaintiff Don Gray against Defendant Sears, Roebuck & Co., Inc. are DISMISSED with prejudice.

The Clerk will enter this Order and send copies to all counsel of record.