Sue GEORGEN–SAAD

v.

TEXAS MUTUAL INSURANCE CO.

No. CIV.A.02–CV–57–JN.

United States District Court,
W.D. Texas,
Austin Division.

April 11, 2002.

Eric J. Taube, Hohmann, Taube & Summers, L.L.P., Austin, for Sue Georgen–Saad, plaintiffs.

Brian Strother Greig, Fulbright & Jaworski, Desiree Durst, Fulbright & Jaworski, Austin, for Texas Mutual Insurance Company, defendants.

## ORDER

NOWLIN, Chief Judge.

Before the Court are Defendant's Amended Motion for Summary Judgment (Clerk's Doc. No. 7), Plaintiff's Response to Defendant's Amended Motion for Summary Judgment (Clerk's Doc. No. 14), Defendant's Reply to Plaintiff's Response to Defendant's Amended Motion for Summary Judgment (Clerk's Doc. No. 18), and Plaintiff's Response to Defendant's Reply to Plaintiff's Response to Defendant's Amended Motion for Summary Judgment (Clerk's Doc. No. 22). Upon review of the pleadings, the applicable legal authorities, and the entire case file, the Court enters the following Order.

### Background

Plaintiff began working for Defendant as Senior Vice President of Finance on 25 April 1994. Plaintiff complains that she was discriminated against based on her gender in contravention of various federal and state statutes during her term of employment with Defendant. Plaintiff resigned her position on 14 June 1996. Defendant now moves for summary judgment on all of Plaintiff's claims.

### Summary Judgment Standard

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the burden of showing that there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir.1997). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman,* 113 F.3d at 533. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue of material fact is presented, and summary judgment is inappropriate. Unsupported allegations, affidavit, or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a proper motion for summary judgment. *Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir.1995) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). Rather, the nonmoving party must set forth specific facts showing the existence of a "genuine" issue concerning every essential component of its case. *Lusk v. Foxmeyer Health Corp.,* 129 F.3d 773, 777 (5th Cir.1997). The standard of review "is not merely whether there is a sufficient factual dispute to per-

mit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir.1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Applying these standards, the Court turns to the merits of the Motion for Summary Judgment.

### Equal Pay Act Claim

■■■ Defendant argues that Plaintiff cannot make out a *prima facie* case under the Equal Pay Act, 29 U.S.C. § 206(d)(1). "To establish a *prima facie* case under the Equal Pay Act, [Plaintiff] must show: 1. her employer is subject to the Act; 2. she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and 3. she was paid less than the employee of the opposite sex providing the basis of comparison." *Chance v. Rice University*, 984 F.2d 151, 153 (5th Cir.1993). According to Defendant, there are no male comparators working in a position requiring equal skill, effort, and responsibility under similar working conditions. The Court agrees. The sealed exhibits filed with Defendant's Motion for Summary Judgment include job descriptions for the Senior Vice Presidents of Investments, Insurance Services, Underwriting Services, Underwriting and Policy Holder Services, Public Affairs, Internal Audit, Benefits/Loss Prevention, Administration, Data Processing Services, and Branch Operations/Marketing. The assertion that any one of these jobs requires "equal skill,[1] effort,[2] and responsibility" as Plaintiff's Senior Vice President

of Finance position cannot be taken seriously. These are Senior Vice Presidents in charge of different aspects of Defendant's operations; these are not assembly-line workers or customer-service representatives. In the case of such lower-level workers, the goals of the Equal Pay Act can be accomplished due to the fact that these types of workers perform commodity-like work and, therefore, should be paid commodity-like salaries. However, the practical realities of hiring and compensating high-level executives deal a fatal blow to Equal Pay Act claims. In cases such as these, no judge or jury should be allowed to second guess the complex remuneration decisions of businesses that necessarily involve a unique assessment of experience, training, ability, education, interpersonal skills, market forces, performance, tenure, etc. Requiring Defendant and other companies to either pay senior executives the same amount or to come to court to justify their failure to do so is simply beyond the pale. In a perfect world, we would be able to grasp the complexities of such calculations and produce a formula that would bring forth the exact amount that any person should be paid at any moment in time. We do not live in such a world. As such, the Court finds that Plaintiff's former position and the positions she attempts to compare it to do not require "equal skill, effort, and responsibility" as evidenced by, *inter alia*, Defendant's job descriptions of the various Senior Vice President positions and Plaintiff's admission that the other Senior Vice Presidents "had different duties and responsibilities" than she had as Senior Vice President of

---

1. "Skill includes consideration of such factors as experience, training, education, and ability." 29 C.F.R. § 1620.15(a).

2. "[J]obs do not entail equal effort, even though they entail most of the same routine duties, if the more highly paid job involves

additional tasks which (1) require extra effort, (2) consume a significant amount of the time of all those whose pay differentials are to be justified in terms of them, and (3) are of an economic value commensurate with the pay differential." *Brennan v. Victoria Bank & Trust Co.*, 493 F.2d 896, 898 (5th Cir.1974).

Finance. (Pla.'s Dep. Vol. I at 63.) Accordingly, Plaintiff's Equal Pay Act claim will be dismissed.

### Equal Pay Claim Under the TCHRA

Defendant argues that Plaintiff's equal pay claim under the Texas Commission on Human Rights Act ("TCHRA") fails for the same reason that Plaintiff's Equal Pay Act claim fails. Plaintiff does not dispute the assertion that these two claims are judged under the same standard. Accordingly, Plaintiff's equal pay claim under the TCHRA will be dismissed.

### Hostile Work Environment Claim

Defendant argues that Plaintiff has not exhausted her administrative remedies with regard to her hostile work environment claim as she did not include this allegation in her complaint to the Texas Commission on Human Rights and, therefore, did not receive a right-to-sue letter on this claim. Plaintiff did not respond to this argument in her Response. Accordingly, the Court will grant this part of Defendant's Motion as unopposed pursuant to Western District of Texas Local Rule CV–7(d).[3] Alternatively, the Court finds that Plaintiff did fail to exhaust her administrative remedies and, therefore, the Court lacks jurisdiction over Plaintiff's hostile work environment claim. See Jones v. Grinnell Corp., 235 F.3d 972, 974–75 (5th Cir.2001).

### Constructive Discharge Claim

Defendant contends that Plaintiff has not established a *prima facie* case of constructive discharge. Claims brought pursuant to the TCHRA are to be analyzed under "analogous federal statutes and the cases interpreting them." See

*Quantum Chemical Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex.2001). "A prima facie case can generally be satisfied if the plaintiff (1) is a member of a protected class, (2) he was qualified for the position that he held before being discharged, (3) he was discharged, and (4) his employer filled the position with a person who is not a member of the protected class." *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468 (5th Cir.2002); see also *Estate of Martineau v. ARCO Chemical Co.*, 203 F.3d 904, 912 (5th Cir.2000); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir.1999); *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 318 (5th Cir.1997). Defendant argues that since Plaintiff was effectively replaced by another female that she cannot satisfy the fourth element of the *prima facie* case. In response, Plaintiff argues that the failure to satisfy the fourth element does not negate her claim, and that, in any event, she was not replaced by a female within the meaning of the relevant case law. The Court will address each of these issues in turn.

In support of her assertion that failure to satisfy the fourth element of a *prima facie* discrimination case does not negate her claim, Plaintiff cites *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246–47 (5th Cir.1985). The court in *Hornsby* states that "[t]his court has previously held that the single fact that a plaintiff is replaced by someone within the protected class does not negate the possibility that the discharge was motivated for discriminatory reasons." *Id.* However, while the fact that the plaintiff has been replaced by someone in the same protected class is "not outcome determinative," it "is certainly material to the question of discriminatory in-

---

3. It is not enough to file some pieces of paper entitled "Response;" a party that opposes some part of a motion must actually *respond*. See Western District of Texas Local Rule CV–7(d) ("The response shall contain a concise statement of the reasons and opposition to the motion and citations of the specific legal authorities upon which the party relies.")

tent." *Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir.1997); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir.2000). In such a case, "the district court must examine all the evidence that has been adduced for other indicia of racial discrimination relating to his discharge and determine whether it is more likely than not that the employer's actions were based on illegal discriminatory criteria." *Jatoi v. Hurst–Euless–Bedford Hosp. Auth.*, 807 F.2d 1214, 1219 (5th Cir. 1987); *see also Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 86 (5th Cir.1982). As the Court finds that Plaintiff's position was filled with a female,[4] Plaintiff must adduce evidence, other than her subjective belief, that makes it more likely than not that Defendant's actions were motivated by her gender. *See Hornsby*, 777 F.2d at 247 ("We affirm the district court's dismissal, however, because Hornsby failed to offer any evidence other than her subjective belief—essentially the same evidence offered with respect to her other charges that she was terminated because of her sex."). Other than the evidence the Court has already rejected for her Equal Pay Act

claim, Plaintiff simply produces no evidence that Defendant constructively discharged her *because of her gender*, much less evidence that makes it "more likely than not." As Plaintiff has failed to raise a genuine issue of material fact as to her prima facie gender discrimination case, the Court will dismiss this claim.[5]

### Intentional Infliction of Emotional Distress Claim

■■■■ Defendant argues that Plaintiff's intentional infliction of emotional distress ("IIED") claim is barred by the applicable statute of limitations. Plaintiff argues that Defendant is barred from asserting this defense for failure to timely plead it. In Texas, IIED claims are subject to a two year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 1997); *Gray v. Sears, Roebuck & Co., Inc.*, 131 F.Supp.2d 895, 901 (S.D.Tex.2001). For purposes of applying the statute of limitations, a cause of action generally "accrue[s] when the wrongful act effects an injury." *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d

---

**4.** Defendant argues that a female, Karen Chadwell, assumed Plaintiff's vacant position. In response, Plaintiff argues that her old position was actually combined with Ms. Chadwell's position, and, therefore, Plaintiff's old position was "essentially" eliminated and she was not replaced at all. The Personnel Action Form of Karen Chadwell states that Ms. Chadwell's former position is "to be combined with other one [Senior Vice President of Finance], salary increase to compensate for broader responsibilities." The resolution of this issue turns on the meaning of "filled the position" as that phrase is used in the relevant case law. *See, e.g., Raggs*, 278 F.3d at 468. "Position" in this context means an aggregation of responsibilities for which the person occupying the position is compensated for accepting. It follows from this that the person assuming this aggregation of responsibilities upon the departure of the person formerly holding the position can fairly be said to be "filling the position." As the Personnel

Action Form of Karen Chadwell makes clear, Ms. Chadwell did assume the "responsibilities" of the Senior Vice President of Finance, was compensated for doing so, and, accordingly, "filled the position." While the Court finds that Ms. Chadwell did fill Plaintiff's position, this is basically irrelevant to the Court's holding that Plaintiff cannot establish the fourth element of a prima facie discrimination case; Plaintiff cannot satisfy the fourth element under either Defendant's theory or her own.

**5.** It was Plaintiff's responsibility not only to produce the required evidence, but also to specifically point it out for the Court; the Court will not pick through hundreds of pages of exhibits searching for evidence to help Plaintiff. *See Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 n. 16 (5th Cir.1994) ("Judges are not like pigs, hunting for truffles buried in briefs.").

348, 351 (Tex.1990). In the instant case, Plaintiff was aware of the acts she now complains of no later than 17 June 1996, her last day of work. However, Plaintiff did not file her IIED claim in court until 8 September 1998—more than two years after her cause of action accrued. Plaintiff argues that Defendant is barred from asserting this defense by operation of Texas Rule of Civil Procedure 63. Rule 63 requires pleadings "offered for filing within seven days of the date of trial or thereafter ... shall be filed only after leave of the judge is obtained." TEX. R. CIV. P. 63. Apparently, before this case was removed to this Court, Defendant attempted to amend its answer in state court to add the statute of limitations defense less than seven days before a 24 January 2002 summary judgment hearing. Plaintiff claims that Defendant's failure to get leave from the state court judge bars them from raising this defense in their present Motion. Plaintiff's argument fails. First, "[f]ederal courts apply state substantive law when adjudicating diversity-jurisdiction claims, but in doing so apply federal procedural law to the proceedings." *Exxon Corp. v. Burglin*, 42 F.3d 948, 950 (5th Cir.1995). The Court is not aware of any analogous federal procedural rule that would bar Defendant from asserting this defense in the instant Motion and Plaintiff does not cite the Court to one. Second, assuming, *arguendo*, that Plaintiff was correct about the applicability of Rule 63, Rule 63 goes on to state that "leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party." TEX. R. CIV. P. 63. Competent counsel should not be surprised by an applicable statute of limitations dealing with one of his asserted claims and nowhere in Plaintiff's Response does he claim that he is. Moreover, the protection of Rule 63 is unnecessary as the "trial" contemplated in Rule 63 never took place, and Plaintiff's counsel had approximately one month between the time Defendant first asserted this defense and the time he filed his Response to Defendant's Motion. Accordingly, the Court finds that Plaintiff's IIED claim is barred by the applicable statute of limitations.

### *Fraud Claim*

It is unclear whether Plaintiff's fraud claim is one of common-law fraud, fraudulent inducement, or both. If Plaintiff's claim is fraudulent inducement, it fails as a matter of law. In Texas, a fraudulent inducement claim requires the existence of a contract. *See Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex.2001) ("Without a binding agreement, there is no detrimental reliance, and thus no fraudulent inducement claim."). Plaintiff specifically admits that she "has not alleged that the Defendant fraudulently induced her to enter a contract." (Pla.'s Resp. at 15.) As such, the Court will dismiss Plaintiff's fraudulent inducement claim.

As for Plaintiff's common-law fraud claim, Defendant argues that the statements by various employees of Defendant cannot, as a matter of law, serve as the basis for Plaintiff's fraud claim. After setting out the relevant standards, the Court will evaluate each of these statements in turn. "A fraud cause of action requires: (1) a material misrepresentation, (2) that was either known to be false when made or was asserted without knowledge of its truth, (3) which was intended to be acted upon, (4) which was relied upon, and (5) which caused injury." *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). "A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made. However, the mere failure to perform a contract is not evidence of fraud. Rather, [plaintiff] had to present evidence

that [defendant] made representations with the intent to deceive and with no intention of performing as represented." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998). Moreover, Plaintiff "must show that each representation complained of concerned a material fact as distinguished from a mere matter of opinion, judgment, probability, or expectation." *Stephanz v. Laird*, 846 S.W.2d 895, 903 (Tex.App.-Houston [1st Dist.] 1993, writ denied). The parties cite to three categories of statements that Plaintiff uses to support her fraud claim. In Plaintiff's deposition, she states that her supervisor, Rod Bouffard, said that he was "trying" to get her a raise (Pla.'s Dep. Vol. I at 56, 58), that the general counsel for Defendant, Russ Oliver, said she would get "credit" for her work (Pla.'s Dep. Vol. I at 173–77), and that Mr. Oliver also stated that another male employee "would not make more" than Plaintiff (Pla.'s Dep. Vol. I at 177–78). As a preliminary matter, Plaintiff produces no evidence whatsoever that Mr. Bouffard or Mr. Oliver intended Plaintiff to act on these "misrepresentations" or that they knew these statements were false when made. Plaintiff's failure to produce any evidence on these points extinguishes her fraud claim.[6] While these reasons are sufficient to dismiss Plaintiff's fraud claim, there are additional reasons

why each of the statements are legally deficient. As to Mr. Bouffard's statement that he was "trying" to get Plaintiff a raise, Plaintiff has produce no evidence that Mr. Bouffard was not trying to do so, and, in any event, the Court finds that this statement is too "vague and indefinite in its nature and terms" to support a fraud claim. *See Putnam v. Bromwell*, 73 Tex. 465, 11 S.W. 491, 492 (1889). Plaintiff's claim that Mr. Oliver promised that another male employee would not be paid more than her fares no better.[7] Plaintiff must show injury to make out a fraud claim. Paying another person more than Plaintiff cannot be said to cause a legally cognizable injury to Plaintiff. Finally, Mr. Oliver's statements that Plaintiff would get "credit" for her work certainly do not amount to a definite promise to raise her salary. "Credit" could mean telling her she was going to get credit (a self-fulfilling statement), a bag of dried mangoes, a gold star on her paycheck, a nice jazz CD, a piece of paper with "credit" written on it, or a raise. Accordingly, the Court finds that Plaintiff has not raised a genuine issue of material fact as to the existence of each element of her *prima facie* fraud claim.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Defendant's Motion for Summary Judgment is hereby GRANTED.

---

**6.** In response to the assertion that Plaintiff has no evidence of Mr. Bouffard's or Mr. Oliver's knowing these statements were false when made, Plaintiff argues that "[s]light circumstantial evidence of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex.1986) (internal quotes omitted). However, "[f]ailure to perform, standing alone, is no evidence of the promissor's intent not to perform when the promise was made." *Id.* And no evidence other than the supposed breach is exactly what Plaintiff has produced for the Court.

**7.** In order to remedy this defect in Plaintiff's deposition testimony, she offers her affidavit that states that "Mr. Oliver specifically promised me that I would receive a raise to a salary equal to that being received by Mr. Johnson." This Court does not entertain such attempts to patch the holes in leaky deposition testimony. *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir.1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.").

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all of Plaintiff's claims against Defendant are hereby DISMISSED WITH PREJUDICE.