455 S.E.2d 799

William A. MILLER, Plaintiff Below, Appellant,

v.

MASSACHUSETTS MUTUAL LIFE IN-SURANCE COMPANY, a Corporation, and Robert L. Riley, CLU, an Individual, d/b/a Robert L. Riley, CLU and Associates, Defendants Below, Appellees.

No. 22241.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 17, 1995.

Decided Feb. 17, 1995.

---

**241**

Kevin B. Burgess, Hamilton, Burgess, Young, Tissue & Pollard, Oak Hill, for appellant.

Herbert G. Underwood, Timothy R. Miley, Steptoe & Johnson, Clarksburg, for appellee, Massachusetts Mut. Life Ins. Co.

Anita R. Casey, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, for appellee, Robert L. Riley, CLU, d/b/a Robert L. Riley, CLU and Associates.

PER CURIAM:

The Appellant, William A. Miller, sued the Appellees, Massachusetts Mutual Life Insurance Company ("MassMutual") and Robert L. Riley, in the Circuit Court of Raleigh County, West Virginia. The circuit court granted MassMutual's and Mr. Riley's motions for summary judgment and dismissed Mr. Miller's complaint. Mr. Miller's assignment of error essentially asks us to adopt the implied covenant of good faith and fair dealing and to engraft it onto his at-will employment contract.

Upon review of the record, the parties' arguments and all other matters submitted before this Court, we conclude that the circuit court faithfully applied our well-settled law on this issue. Given that we find no compelling reason to depart from our established precedent, we now affirm the circuit court's ruling.

I.

On September 26, 1980, Mr. Miller was hired to sell insurance policies issued by MassMutual. On that date, Mr. Miller entered into a "CAREER CONTRACT For Full-time Agents" with Mr. Riley, a general agent for MassMutual. The contract contained the following at-will provision:

*This contract shall terminate on the date of written notice of termination by either party to the other party,* such notice being mailed to the last known post office address of the other party. *Neither in the notice of termination nor at any other time shall the party terminating the contract be required to give any reason or cause for termination, it being the agreement of the parties that this contract may be terminated at will by the other, with or without cause.*

(Emphasis added).

After executing the contract, Mr. Miller commenced work in MassMutual's Beckley, West Virginia office.

Mr. Miller's compensation was based largely, if not exclusively, upon commissions from his sales of MassMutual insurance policies. While the particulars of the compensation arrangement are somewhat sketchy, we are able to glean the basics of the scheme from the record.

When Mr. Miller and similar agents sold insurance and a policy was subsequently issued by MassMutual, the agent received a "first year commission" of roughly 55% of the first year's premium. If the agent continued his or her employment, the agent received lesser percentages (ranging between 10% in policy years two through five and down to 2% in year eleven) of each renewal premium that was paid on the policy (hereinafter "future renewal commissions"). This scheme changed, however, if the agent's employment was terminated at any time after the first premium on the policy was paid in year one.

First, a terminated agent's future renewal commissions were split on a 50/50 basis into two components: (1) "basic vested" renewal commissions, and (2) "earned vested" renewal commissions. Second, the terminated agent was only entitled to his first year commission and the basic vested renewal commissions on renewal premiums paid in years two through five. Whether he received earned vested renewal commissions in addition to this depended largely upon his years of service to the employer. In short,

in order for Mr. Miller to receive some portion of earned vested renewal commissions in addition to his basic vested renewal commissions he was required either to (1) have served his employer for twelve years *or* (2) have reached 46 years of age *and* completed two years of employment.

Mr. Miller was terminated in 1988, and he filed the instant lawsuit. At the time of his termination, he had satisfied neither of the above preconditions for earned vested renewal commissions, and thus he received only the basic vested renewal commissions from April 1988 through June 1992 to which he was entitled. Mr. Miller's two count complaint alleged that his termination violated (1) West Virginia Code §§ 33–12A–1 to –5 (1992), and (2) the implied covenant of good faith and fair dealing. The circuit court found, inter alia, that Mr. Miller received all of the commissions to which he was entitled under the terms of the contract, i.e., the first year commissions and the basic vested renewal commissions. Further, the court concluded (1) that West Virginia Code §§ 33–12A–1 to –5 did not apply to Mr. Miller's at-will contract, and (2) that West Virginia law does not recognize the implied covenant of good faith and fair dealing in the context of such a contract.[1] Accordingly, the court granted MassMutual's and Mr. Riley's motions for summary judgment and dismissed Mr. Miller's complaint.

We granted Mr. Miller's petition for appeal on April 13, 1994. In a nutshell, he asserts that the Appellees terminated his contract in bad faith. He states that his contract and the appellees' conduct falsely led him to believe that he was on a career track with MassMutual. He also claims that the statistical evidence tends to demonstrate that "it was highly unlikely, if not impossible, for an agent to remain with ... [MassMutual] for twelve years" and thus be entitled to receipt of the full measure of his or her future renewal commissions. He argues that Mass-

Mutual counts on this type of high early attrition rate to maintain its low premiums for policyholders and to set its future commission schedules. In Mr. Miller's words, MassMutual "can charge less for premiums (and thereby be more competitive in selling insurance) because it knows that on most policies it will not have to share the [future] renewal premiums with the producing agent for more than a few years."[2]

Mr. Miller also argues that the termination of newer agents benefits general agents such as Mr. Riley because Riley and his district manager inherit the right to service policy holders that were previously serviced by the terminated agent. In sum, however, Mr. Miller maintains that it is unfair to allow the Appellees to escape paying the full measure of future compensation to a terminated agent (i.e., the earned vested renewal commissions) that is based on his or her present and past services. Mr. Miller contends that the termination of his employment by the Appellees "exhibited no faithfulness to the common purpose of their agreement, and ... [was] absolutely inconsistent with Mr. Miller's justified expectations of future compensation." As a result, Mr. Miller argues that the Appellees breached the implied covenant of good faith and fair dealing, and he asks us to adopt the covenant in the context of his at-will employment contract.

After fully considering Mr. Miller's arguments, we conclude that the circuit court faithfully applied our current precedent on this issue. Given that Mr. Miller has offered us no compelling reason to depart from this settled law, we affirm the circuit court's ruling.

## II.

■ We have often stated the settled principle that " '[w]hen a contract of employment is of indefinite duration it may be terminated at any time by either party to the contract.'

1. Mr. Miller does not challenge the circuit court's determination under W.Va.Code §§ 33–12A–1 to –5.

2. The Appellees, of course, paint a different picture. For instance, Mr. Riley states that Mass-Mutual suffers a loss on the monies it invests in

training and developing an agent like Mr. Miller if the agent stays with MassMutual for less than ten years. Mr. Riley also notes that when an agent leaves MassMutual, there is a real risk that the agent will take his clients along and move their business to another company.

Syl. Pt. 2, *Wright v. Standard Ultramarine & Color Co.*, 141 W.Va. 368, 90 S.E.2d 459 (1955)." Syl. Pt. 1, *Dent v. Jack Fruth & Fruth Pharmacy, Inc.*, 192 W.Va. 506, 453 S.E.2d 340 (1994).

■ In *Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 117, 246 S.E.2d 270, 272 (1978), we examined the question of when, if ever, an at-will employee can recover damages arising from his or her discharge from employment. We first discussed cases from other jurisdictions dealing with discharges in violation of some substantial public policy. *Id.* at 120–21, 246 S.E.2d at 273–74. We then noted that two jurisdictions had embraced an even *"broader* concept" of allowing an employee to seek redress for a " 'bad faith' " termination. *Id.* at 122, 246 S.E.2d at 274 (emphasis added) (quoting in part *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (1977)). In *Fortune*, the court stated as follows:

> 'in *every* contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in *every* contract there exists an implied covenant of good faith and fair dealing.'

*Id.* at 104, 364 N.E.2d at 1257 (quoted authority omitted) (emphasis in original).

While we considered the *Fortune* notion of imposing such a covenant on the parties in *Harless*, we ultimately chose the narrower approach. *Harless*, 162 W.Va. at 124, 246 S.E.2d at 275. Thus we declined to adopt the implied covenant of good faith and fair dealing in the context of at-will employment, and merely set forth the following edict in *Harless*'s lone syllabus point:

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy princip[le], then the em-

ployer may be liable to the employee for damages occasioned by this discharge. Syllabus, *Harless v. First Nat'l Bank*, 162 W.Va. 116, 246 S.E.2d 270 (1978); *See* Syl. Pt. 1, *Roberts v. Adkins*, 191 W.Va. 215, 444 S.E.2d 725 (1994).

In cases subsequent to *Harless*, we have continued our adherence to the narrower approach and have yet to impose the implied covenant of good faith and fair dealing on the at-will relationship. For instance, as recently as four years ago, we decided *Shell v. Metropolitan Life Insurance Co.*, 183 W.Va. 407, 396 S.E.2d 174 (1990). In *Shell*, too, we were faced with the allegedly wrongful termination of an insurance agent who was employed by a company for over eighteen years. Although the agent in *Shell* had received several awards for high sales in the past, he had experienced a drop-off in production in the few years preceding his termination. Part of this decline in sales was due to the poor economic conditions in his territory. While the agent's sales improved after admonishments from Metropolitan, the latter still terminated his employment.[3] The circuit court considered, but rejected, the agent's assertion that his termination violated the implied covenant of good faith and fair dealing. *Id.* at 409, 396 S.E.2d at 176. On appeal, we stated as follows:

> Before *Harless*, ... West Virginia followed the general rule that 'at will' employment was terminable by either party, with or without cause. *Harless* recognized an exception to the general rule when the employer's motivation for the discharge contravenes a substantial public policy. Although in *Harless* we noted that Massachusetts recognized 'an implied covenant of good faith and fair dealing[,]' we adopted only the substantial public policy exception for at will employees. In *Stanley v. Sewell Coal Co.*, 169 W.Va. 72, 76, 285 S.E.2d 679, 682 (1981), we again considered Massachusetts's implied covenant of good faith and fair dealing but then noted that [in] *Harless*'s rationale there was a substantial public policy against fraud and applied a

---

**3.** Like the instant case, the agent in *Shell* had an employment contract which " 'provided that he could be dismissed by Metropolitan "without advance notice ... at any time by two weeks" [sic]

notice in writing[.]' " *Id.* at 410, 396 S.E.2d at 177 (quoting *Shell v. Metropolitan Life Ins. Co.*, 181 W.Va. 16, 18, 380 S.E.2d 183, 185 (1989)).

two year statute of limitation. *Under Harless and its progeny, a substantial public policy violation is the only exception to the general rule that 'at will' private employment is terminable by either party, with or without cause.*

*Id.* at 414, 396 S.E.2d at 181 (citations omitted) (emphasis added).[4]

■ As demonstrated above, our law is well-settled: we do not recognize the implied covenant of good faith and fair dealing in the context of an at-will employment contract. Given that the Appellant has offered little justification for departing from this determined course, and that the overwhelming majority of other jurisdictions adhere to our position, we discern no error in the circuit court's ruling.[5] Accordingly, the judgment of the circuit court is hereby affirmed.[6]

Affirmed.

BROTHERTON, J., did not participate.

FOX, Judge, sitting by temporary assignment.

---

**4.** Even given the clarity of this language rejecting the implied covenant, some have read the two sentences following this quotation to indicate that we considered the agent's implied covenant claim on the merits. To the extent that these two sentences have engendered any confusion about our position on the presence of the implied covenant under West Virginia law, however, they are mere dicta.

We also note that the Appellant places great emphasis on our decision in *Bryan v. Massachusetts Mutual Life Insurance Co.*, 178 W.Va. 773, 364 S.E.2d 786 (1987). While we did utilize the implied covenant in that case, we were required to do so because Massachusetts law controlled the matter. *See id.* at 777–78, 364 S.E.2d at 790. As noted above, Massachusetts recognizes the implied covenant in the at-will context. *See, e.g., Fortune*, 373 Mass. at 96, 364 N.E.2d at 1251. Accordingly, *Bryan* is inapposite.

**5.** Counsel for Mr. Miller stated at oral argument that only three of fifty jurisdictions have adopted the covenant in the at-will context. While our research discloses that the picture is not quite so bleak, the overwhelming majority of jurisdictions appear to have refused to adopt the covenant. *See, e.g.,* Christopher L. Pennington, Comment,

*The Public Policy Exception to the Employment–At–Will Doctrine: Its Inconsistencies in Application,* 68 Tul.L.Rev. 1583, 1592–93 (1994) (stating "The least recognized exception to employment at will is the good faith and fair dealing exception" and that "[t]his exception has not enjoyed wide application ..."); Theodore J. St. Antoine, *Employment–At–Will—Is the Model Act the Answer?,* 23 Stetson L.Rev. 179, 185 (1993) (stating "Potentially the most expansive common law safeguard for employees is the covenant of good faith and fair dealing. But only about a dozen states have recognized this doctrine."); Monique C. Lillard, *Fifty Jurisdictions in Search of a Standard: The Covenant of Good Faith and Fair Dealing in the Employment Context,* 57 Mo.L.Rev. 1233, 1258–59 (1992) (stating "Thirty-seven states have refused to allow an action on the covenant in an at will situation"). The foremost reason for the doctrine's limited acceptance is best summed up by Professor Lillard: "[T]he concept of good faith and fair dealing is too vague to be helpful to either party or even to the court." Lillard, *supra,* at 1233.

**6.** The Appellees raised additional arguments in support of the circuit court's ruling. Given our disposition, we need not address these further contentions.