575 S.E.2d 618

**Betty A. TIERNAN, Plaintiff Below, Appellant,**

v.

**CHARLESTON AREA MEDICAL CENTER, INC., a West Virginia corporation, Defendant Below, Appellee.**

No. 30362.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 9, 2002.

Decided Dec. 2, 2002.

Concurring and Dissenting Opinion of Chief Justice DAVIS Dec. 5, 2002.

Concurring Opinion of Justice STARCHER Dec. 11, 2002.

Walt Auvil, Esq., Auvil & Davitian, Parkersburg, for Appellant.

Rita Massie Biser, Esq., Stephen A. Weber, Esq., Kay, Casto & Chaney, Charleston, for Appellee.

PER CURIAM.

In the instant case we reverse a ruling of the circuit court that granted summary judgment against a nurse who was fired and claimed that her firing was in retaliation for her criticism of nurse staffing and employment policies. Finding that there are material issues of fact, we remand the case for trial.

I.

The appellant is Ms. Betty Tiernan. Ms. Tiernan was employed as a nurse by Charleston Area Medical Center ("CAMC") from 1985 to 1994, when she was discharged by CAMC for the stated reason that Ms. Tiernan brought a reporter to view a televised announcement where news of a corporate merger was being presented to CAMC employees.

In 1995, Ms. Tiernan sued CAMC in the Circuit Court of Kanawha County, claiming that CAMC had wrongfully discharged her, and thereafter had tortiously interfered with her subsequent employment.[1]

In her wrongful discharge claim, Ms. Tiernan asserted that her bringing a reporter to view the merger announcement was simply a pretext. She alleged that CAMC was actually motivated by the fact that Ms. Tiernan had, shortly before her discharge, spearheaded a campaign protesting proposed changes in CAMC's nurse staffing and employment policies and practices.

Ms. Tiernan identified three separate legal theories as providing a legal basis for her wrongful discharge claim: (1) that CAMC violated her state constitutional rights to freedom of speech and association; (2) that her criticism of and opposition to CAMC's nurse staffing and employment policies and practices was protected by public policy; and (3) that CAMC breached a promise not to take adverse action against employees who spoke out or talked to newspaper reporters.

In 1996, the circuit court entered summary judgment on behalf of CAMC and against Ms. Tiernan on all of her claims, theories, and grounds. This Court reviewed the circuit court's action in *Tiernan v. Charleston Area Medical Center, Inc.,* 203 W.Va. 135, 506 S.E.2d 578 (1998) *("Tiernan I")*; and affirmed in part and reversed in part the circuit court's grant of summary judgment. We held that the circuit court had properly granted summary judgment on Ms. Tiernan's state constitution-based free-speech/association wrongful discharge theory, and on her tortious interference claim.

However, this Court reversed the circuit court's grant of summary judgment on Ms. Tiernan's two remaining wrongful discharge theories—public policy and breach of promise—holding that the circuit court's order granting summary judgment on those issues had not articulated the factual and legal basis for the court's decision, as required by Syllabus Point 3 of *Fayette County Nat. Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997).

---

1. Ms. Tiernan's tortious interference claim was based on CAMC's telling Ms. Tiernan's subsequent employer (after she was fired by CAMC) that Ms. Tiernan was working as a union organizer, leading to her discharge by that employer.

*Tiernan I, supra,* 203 W.Va. at 150–151, 506 S.E.2d at 593–594.

On remand, the circuit court entered an order granting summary judgment for CAMC on Ms. Tiernan's two remaining theories, this time setting forth the court's reasoning. It is this decision by the circuit court that we review in the instant case; we present the pertinent facts in the body of our discussion.[2]

## II.

■ This Court's review of a trial court's grant of summary judgment is *de novo.* Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

### A.

### *Public Policy Claim*

As recounted at length in *Tiernan I,* Ms. Tiernan was a highly skilled employee with an unblemished and exemplary nine-year employment record of hard work, leadership, and excellence in communication and work performance. In the winter of 1993–94, Ms. Tiernan was a leader in an apparently substantially successful campaign of opposition to certain proposed changes in CAMC's nurse staffing and employment policies and practices. Ms. Tiernan and others believed that these policies and practices would ad-

versely affect nurses' economic well-being, personal lives, and professional interests—and, she contends, could also adversely affect patient safety and well-being.

The active phase of the campaign lasted for a number of weeks. It involved letters to the editor and stories in the newspaper, discussions at CAMC staff meetings, and other activities. As previously noted, it appears that a number of proposed changes in nurse staffing and employment policies were either not implemented or modified, at least in part as a result of the campaign, and particularly, Ms. Tiernan's efforts.

Several weeks after the campaign had somewhat abated, Ms. Tiernan was fired. CAMC's stated reason for the firing was the fact that on the day that she was fired, Ms. Tiernan invited a newspaper reporter to accompany Ms. Tiernan to view an internally televised announcement, in a CAMC building, regarding a CAMC corporate merger.[3] Ms. Tiernan contends that this stated reason was pretextual, and that the conduct that actually underlay and motivated her firing was her criticism of CAMC's nurse staffing and employment policies and practices, and her role in spearheading the campaign to oppose those policies and practices—including talking to the media about her complaints.[4]

---

**2.** The appellant also asks us to reconsider this Court's partial affirmance of the trial court's summary judgment in *Tiernan I,* and to modify or reverse the new syllabus points that were set forth in that case. Such an action by this Court would contradict the "law of the case" principle that is set forth at Syllabus Point 1 of *Mullins v. Green,* 145 W.Va. 469, 115 S.E.2d 320 (1960): "The general rule is that when a question has been definitely determined by this Court its decision is conclusive on parties, privies and courts, including this Court, upon a second appeal or writ of error and it is regarded as the law of the case."

**3.** Ms. Tiernan apparently believed that the televised announcement might be related to CAMC's nurse staffing and employment policies. Ms. Tiernan alleges that the announcement was televised in areas accessible to visitors, patients, and others, and that she was never informed that the announcement was closed or restricted to the public. A CAMC public relations employee was apparently present and aware of the reporter's presence but did not ask the reporter to leave the room. It does not appear that the reporter used

the merger information; a CAMC employee apparently advised the reporter afterward of a news blackout on the merger announcement. Ms. Tiernan argues that even assuming *arguendo* that her conduct was technically improper, it is unthinkable that an extremely valuable and effective long-term employee would be discharged for such conduct, absent some other motive or animus. CAMC states that the presence of the newspaper reporter was a breach of their schedule for media release of the merger news, and that her conduct was a severe breach of proper employee conduct and fully deserving of termination. The facts—and the inferences and conclusions to be drawn from the facts—regarding this incident, are clearly matters for jury determination.

**4.** In her amended complaint, Ms. Tiernan states that "upon information and belief, CAMC's Director of Personnel stated that she would 'get' Ms. Tiernan's job for having written the letters [to the newspaper complaining about changes in nurse staffing and employment policies] and instigating the unrest with other nurses . . . ."

We have recognized in numerous employment law cases that such "motive" issues ordinarily present classic questions of fact. For example, in *Hanlon v. Chambers*, 195 W.Va. 99, 113, 464 S.E.2d 741, 755 (1995), we stated:

Because of the obvious temporal proximity of the discharge to the protected activity, the plaintiff stated a prima facie case. The defendant's response that her discharge was the result of the recommendation of an expert management consultant simply put the matter of motive at issue. The plaintiff must have an opportunity to show that the proffered explanation was pretextual or that a retaliatory motive at least contributed to the discharge decision. Obviously, these matters raise substantial factual issues.

CAMC, while asserting that only the reporter incident had anything to do with Ms. Tiernan's firing, does not dispute the general principle that the resolution of such motive issues in wrongful discharge claims is ordinarily for the finder of fact.

CAMC argues, however, that even if it is assumed *arguendo* that Ms. Tiernan's firing was motivated in whole or substantial part by Ms. Tiernan's activity in spearheading a campaign criticizing CAMC's nurse staffing and employment policies and practices—that her discharge would still not be actionable. CAMC argues that this is so because there is no evidence that Ms. Tiernan's criticisms involved assertions that patient safety would be adversely affected by the policies and practices—and that only criticism that raises such "patient-safety" concerns may be recognized as protected by law.

CAMC bases its argument upon our decision in *Tudor v. Charleston Area Medical Center, Inc.*, 203 W.Va. 111, 506 S.E.2d 554 (1997), where we recognized that adverse employment actions taken in reaction to criticisms of nurse staffing policies and practices—criticisms that are based on the allegation that the policies and practices would threaten patient safety—may be actionable. In *Tudor*, we held that Ms. Jana Lynn Tudor, a nurse who complained about nurse staffing practices at CAMC, was protected by a substantial "public policy" principle that

is articulated at *W.Va.C.S.R.* 64–12–19.2.4, designed to insure that ". . . patients are protected from inadequate staffing practices[.]" *Tudor*, 203 W.Va. at 124, 506 S.E.2d at 567.

■ The Syllabus of *Harless v. First Nat'l Bank*, 162 W.Va. 116, 246 S.E.2d 270 (1978) states:

The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

■ Syllabus Point 5 of *Tudor v. Charleston Area Medical Center, Inc.*, 506 S.E.2d 554, 203 W.Va. 111, states:

West Virginia Code of State Regulations § 64–12–14.2.4 (1987) sets forth a specific statement of a substantial public policy which contemplates that a hospital unit will be properly staffed to accommodate the regulation's directive; to ensure that patients are protected from inadequate staffing practices; and to assure that medical care is provided to hospital patients, especially children and young adolescents, who must depend upon others to protect their medical interests and needs.

We stated in *Tudor* that whether Ms. Tudor "was (constructively) discharged for bringing attention to a [nurse] staffing practice [that created a substantial danger to the safety of the public] is . . . a factual determination. . . ." *Tudor*, 506 S.E.2d at 567, n. 30, 203 W.Va. at 124, n. 30; and we upheld a jury verdict in Ms. Tudor's favor on her wrongful discharge claim.

In the instant case, the circuit court agreed with CAMC's argument; the court concluded that in response to CAMC's motion for summary judgment, Ms. Tiernan did not point to any evidence that would permit a fact-finder to conclude that her criticism and campaign raised patient safety issues.

■ "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried

and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

 Courts considering motions for summary judgment "must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion." *Painter v. Peavy,* 192 W.Va. 189, 192, 451 S.E.2d 755, 758. "Summary judgment should be denied 'even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom.'" *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995), *quoting Pierce v. Ford Motor Co.,* 190 F.2d 910, 915 (4th Cir.), *cert. denied,* 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666 (1951).

 As Justice Cleckley stated in the similar context of an employment discrimination case, *Conrad v. ARA Szabo,* 198 W.Va. 362, 370, 480 S.E.2d 801, 809 (1996):

> In *Hanlon v. Chambers,* 195 W.Va. 99, 464 S.E.2d 741 (1995), we cautioned circuit courts to be particularly careful in granting summary judgment in employment discrimination cases. Although we refuse to hold that simply because motive is involved that summary judgment is unavailable, the issue of discriminatory animus is generally a question of fact for the trier of fact, especially where a prima facie case exists. The issue does not become a question of law unless only one conclusion could be drawn from the record in the case. In an employment discrimination context, the employer must persuade the court that even if all of the inferences that could reasonably be drawn from the evidentiary materials of the record were viewed in the light most favorable to the employee, no reasonable jury could find for the plaintiff.

Thus, the narrow issue that was before the circuit court and is before this Court is whether Ms. Tiernan, in responding to CAMC's motion for summary judgment, pointed to evidence that—viewed in the light most favorable to Ms. Tiernan, and without engaging in a weighing process—would permit a fact-finder to conclude that Ms. Tier-

nan's criticisms and campaign raised issues of patient safety.

On this issue, we turn to this Court's opinion in *Tudor,* where we discussed at some length the circuit court's admitting into evidence an evidentiary deposition by Ms. Tiernan—on behalf of Ms. Tudor in her case. In that deposition, Ms. Tiernan testified about her criticisms of CAMC nurse staffing policies. We stated in *Tudor* that Ms. Tudor had offered the Tiernan deposition to show:

1. That similar to Jana Tudor, Betty Tiernan was formerly employed as a nurse by CAMC.

2. That similar to Jana Tudor, Betty Tiernan voiced complaints to CAMC about *unsafe staffing practices* on her unit.

3. That similar to Jana Tudor, Betty Tiernan's complaints related to the practice of assigning only one nurse on a unit.

4. That similar to Jana Tudor, Betty Tiernan was forced to leave her employment within a few months after making these staffing complaints.

5. That similar to Jana Tudor, Betty Tiernan subsequently encountered difficulties in finding other nursing employment in the Kanawha Valley area.

*Tudor, supra,* 203 W.Va. at 128–129, 506 S.E.2d at 571–572. (Emphasis added.)

In *Tudor,* CAMC argued that the Tiernan deposition should not have been admitted into evidence. We concluded, however, that the trial court had properly admitted Ms. Tiernan's deposition into evidence as Rule 404(b) "other acts" evidence of motive—because the deposition was offered to show Ms. Tiernan's "complaints to CAMC about unsafe staffing practices on her unit" and an adverse employment action by CAMC following those complaints. *Id.*

 Our ruling in *Tudor* approving the court's admission of Ms. Tiernan's deposition into evidence, as relevant evidence tending to show CAMC's motive in Ms. Tudor's case, was necessarily based on the conclusion that CAMC's actions toward Ms. Tiernan could be seen by the jury as also being violative of the public policy protecting "unsafe staffing practices" criticisms—the improper motive that was being asserted by Ms. Tudor. If Ms.

Tiernan's deposition could not be seen as showing at least inferentially this motive by CAMC, the deposition would not have been admissible in *Tudor*. Moreover, the Tiernan deposition itself provides direct testimonial evidence to the effect that Ms. Tiernan raised complaints of unsafe staffing practices by CAMC.

In the instant case, Ms. Tiernan's deposition testimony from *Tudor* was before the circuit court when it was considering CAMC's motion for summary judgment. Therefore, consistent with our prior ruling in *Tudor*, Ms. Tiernan's deposition testimony from *Tudor* must be viewed at a minimum as permitting a finding that Ms. Tiernan's criticisms of CAMC nurse staffing and employment policies and practices raised concerns about patient safety.[5]

In light of our holding in *Tudor* that Ms. Tiernan's deposition was admissible in Ms. Tudor's case to show that in another instance CAMC had acted adversely to an employee who had raised "unsafe staffing" concerns; in light of the other evidence that raising patient safety concerns was part of Ms. Tiernan's criticisms and campaign; and in light of the principle that all permissible inferences must be given to the non-movant in a summary judgment determination, we conclude that the circuit court's determination that there was no evidence showing that Ms. Tiernan raised patient safety concerns must be viewed as erroneous.

This is not to say that a jury could not conclude that Ms. Tiernan's criticisms and the campaign that she spearheaded had nothing to do with her firing, and that the sole reason and motivation for her termination was her action in bringing a reporter to view the televised announcement. But under the record that was presented to the circuit court in the context of CAMC's motion for summary judgment, these are clearly disputed factual issues for a jury to resolve, and summary judgment on Ms. Tiernan's public policy wrongful discharge theory and claim was therefore improper.

## B.

### *Breach of Promise*

■ Ms. Tiernan also asserts that her discharge was in breach of a specific promise made by her employer. She asserts that this promise is enforceable under the doctrine of promissory or equitable estoppel. Specifically, Ms. Tiernan alleges that a CAMC management representative stated, at a meeting that Ms. Tiernan attended, that "nurses had every right to speak to newspaper reporters and that he would not retaliate if they [nurses] chose to speak up." Ms. Tiernan says that she relied upon these assurances.

■ This Court has recognized that under certain circumstances, employers may be bound by promises that they make to their employees. *See, e.g., Cook v. Heck's*, 176 W.Va. 368, 342 S.E.2d 453 (1986) (promises made in employee handbook may be legally binding). In Syllabus Point 3 of *Adkins v. Inco Alloys Intern., Inc.*, 187 W.Va. 219, 417 S.E.2d 910 (1992), we held that:

> Where an employee seeks to establish a permanent employment contract *or other substantial employment right*, either through an express promise by the employer or by implication from the employer's personnel manual, policies, or custom

---

5. In addition, other evidence pointed to by Ms. Tiernan could support a finding that her criticism of the CAMC nurse staffing and employment policies and practices raised patient safety concerns. Ms. Tiernan testified that she specifically criticized CAMC's "float policy" in part because it was unsafe for patients. CAMC minutes show that at a nursing staff meeting attended by Ms. Tiernan during her campaign, concerns were expressed that "float" nurses were not aware of normal operating procedures at the critical care unit. A newspaper article reported that Ms. Tiernan:

> ... wrote a letter to the editor of the Charleston Gazette criticizing cutbacks at the hospital.

She also organized meetings between nurses and administrators to talk about patient care and employee cutbacks, other nurses said[;] Another newspaper article said:

> "[CAMC's policy] sounds like a very effective, problem-solving action, but in effect it can hinder the quality of patient care that is delivered," said Betty Tiernan, a nurse in the medical intensive care unit at Memorial Division[;] and quoted an American Nurses Association spokesperson as stating that the CAMC "floating" policy was "not safe" because it "puts patients in danger."

and practice, *such claim must be established by clear and convincing evidence.* [emphasis added].

We have also held that:

[e]quitable estoppel cannot arise merely because of action taken by one on a misleading statement made by another. In addition thereto, it must appear that the one who made the statement intended or reasonably should have expected that the statement would be acted upon by the one claiming the benefit of estoppel, and that he, without fault himself, did act upon it to his prejudice.

Syllabus Point 4, *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965).

Thus, to prevail on such a claim in the instant case, Ms. Tiernan would have to persuade a fact-finder: (1) by clear and convincing evidence, that CAMC made an express promise to its employees that they would suffer no retaliation or adverse action for speaking out and/or talking to newspaper reporters in connection with the campaign in opposition to nurse staffing and employment policies; and that CAMC intended or reasonably should have expected that such a promise would be relied and/or acted upon by an employee like Ms. Tiernan; and (2) by a preponderance of the evidence, that Ms. Tiernan, being without fault herself, reasonably relied on that promise by CAMC, which reliance led to her discharge; and that in discharging Ms. Tiernan, CAMC breached that promise.

In light of the standard for evaluating motions for summary judgment, where a weighing of the evidence is not ordinarily germane, we conclude that Ms. Tiernan has pointed to sufficient evidence that would allow a fact-finder to make the above findings. Therefore, her claim can survive a motion for summary judgment on this theory; and the order of summary judgment granted against

Ms. Tiernan on her wrongful discharge claim based on a breach of promise theory should likewise be reversed.

### III.

The circuit court's order of summary judgment on Ms. Tiernan's wrongful discharge claims is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

DAVIS, C.J., concurring, in part, and dissenting, in part.

(Filed Dec. 5, 2002)

In this proceeding, the circuit court granted summary judgment to Charleston Area Medical Center (hereinafter referred to as "CAMC") after finding no disputed material issues of fact existed to support Ms. Tiernan's claims of retaliatory discharge and breach of employment contract. The majority opinion reversed summary judgment on both theories of liability. As to the retaliatory discharge theory, I believe the circuit court failed to view the evidence in the light most favorable to Ms. Tiernan as the nonmoving party.[1] Consequently, I concur in the majority's decision to reverse summary judgment on the retaliatory discharge theory.[2] However, I believe the circuit court was correct in granting summary judgment on Ms. Tiernan's breach of employment contract claim. Therefore, for the reasons set out below, I dissent from the majority's decision to reverse summary judgment on the breach of employment contract claim.

### A. *The Majority Opinion Misconstrued the Facts on the Breach of Employment Contract Theory*

Ms. Tiernan alleged that she was terminated because of her criticisms of CAMC's policies. The record is clear. Ms. Tiernan was

---

**1.** See *Pritt v. Republican Nat'l. Comm.,* 210 W.Va. 446, 453, 557 S.E.2d 853 n. 9, 210 W.Va. 446, 557 S.E.2d 853, 860 n. 9 (2001), *cert. denied,* — U.S. —, 123 S.Ct. 71, 154 L.Ed.2d 14 (2002). ("[W]hen deciding a motion for summary judgment, the reviewing tribunal 'must draw any permissible inference from the underlying facts in the most favorable light to the party opposing the motion.' " (quoting *Williams v. Precision Coil,*

*Inc.,* 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995))).

**2.** I also concur in the majority's decision not to revisit the substantive issues that were conclusively resolved in *Tiernan v. Charleston Area Medical Center, Inc.,* 203 W.Va. 135, 506 S.E.2d 578 (1998).

an at-will employee with CAMC. As a consequence, "[e]ither party could terminate the at-will employment with or without cause and no cause of action would accrue." *Shanholtz v. Monongahela Power Co.*, 165 W.Va. 305, 310, 270 S.E.2d 178, 182 (1980). On the other hand, "[c]ontractual provisions relating to discharge or job security may alter the at will status of a particular employee." Syl. pt. 3, *Cook v. Heck's, Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986). In this case, Ms. Tiernan alleged that her at-will employment status was altered because she had a contractual agreement with CAMC that prevented CAMC from terminating her as a result of her criticisms of its policies. The majority opinion found that material issues of fact existed as to whether such an agreement was made. I disagree.

To find disputed material issues of fact on the breach of employment contract claim, the majority opinion had to distort relevant facts. The majority opinion erroneously concluded that "Ms. Tiernan allege[d] that a CAMC management representative stated, at a meeting Ms. Tiernan attended, that 'nurses had every right to speak to newspaper reporters and that he would not retaliate if they [nurses] chose to speak up.'" This rendition of the facts is not supported by the record.

Ms. Tiernan made no claim that the contractual agreement was made directly with her or other nurses at a meeting. In fact, the record clearly shows that Ms. Tiernan based her contractual agreement on a statement which was reported in an article printed by *The Charleston Daily Mail* on April 8, 1994.[3] In that article, a CAMC official was reported as stating that CAMC employees would not be retaliated against for speaking out about CAMC policies. The newspaper article was the only evidence presented by Ms. Tiernan to show an alleged contractual agreement. As a consequence of this single piece of unsubstantiated evidence, the majority opinion holds that material issues of fact were in dispute as to whether CAMC made an agreement with Ms. Tiernan that prevented her termination for voicing her disapproval of CAMC's policies.

The majority decision on this issue establishes a dangerous precedent. Under the majority opinion, employers can now be contractually bound to their employees for any type of statement allegedly made by them that is reported in newspapers. I do not believe the law of contracts, as developed in Anglo–American jurisprudence, permits an employment agreement to be formed based upon unsubstantiated statements printed in a newspaper. Prior to the decision in this case, our employment contract law had gone no farther than to find that "[a]n employee handbook may form the basis of a unilateral contract if there is a definite promise therein by the employer not to discharge covered employees except for specified reasons."

**3.** The summary judgment order of the circuit court addressed this issue in the following manner:

Plaintiff claims that a statement by George Velianoff, CAMC's Nursing Administrator, quoted in an article in *The Charleston Daily Mail* on April 8, 1994, created an oral contract between her and the hospital upon which she relied as a term and condition of her employment. The *newspaper article which Plaintiff contends created an oral contract* of her employment quoted Mr. Velianoff as saying that nurses have every right to talk to newspaper reporters and he would not retaliate if they chose to speak up. . . .

*Plaintiff claims that she relied upon the statement by Mr. Velianoff in the newspaper article* to form the understanding of the terms and conditions of her employment. However, the newspaper article upon which Plaintiff relies to support her claims cannot constitute a basis for an oral contract of employment for several

reasons. Consequently, Plaintiff's claims fail as a matter of law and must be dismissed. (Emphasis added.) Notwithstanding this clear finding of the evidence by the circuit court, the majority opinion contended that Ms. Tiernan was personally informed at a meeting that there would be no retaliation against CAMC employees for speaking out about CAMC's policies. Giving the majority opinion the benefit of doubt, it may be possible that the majority opinion simply misinterpreted a passage from a set of interrogatories Ms. Tiernan responded to during discovery. In those interrogatories, Ms. Tiernan responded to a question as follows: "Mr. Velianoff stated nurses had every right to talk to newspaper reporters and that he would not retaliate if they chose to speak up." I do not find this statement to mean that Ms. Tiernan is contending that she was personally told this information at a meeting. The statement is consistent with what she read in a newspaper and what she argued before the circuit court.

Syl. pt. 6, *Cook*, 176 W.Va. 368, 342 S.E.2d 453. The decision in the instant case takes the formation of employment contracts in West Virginia outside the universe of Anglo–American law "to a place where no [reasonable person] has ever gone before." *Star Trek*: Episode Introduction monologue.

In view of the foregoing, I concur in the majority decision regarding Ms. Tiernan's retaliatory discharge claim. However, I respectfully dissent from the majority's decision concerning Ms. Tiernan's breach of employment contract claim. I am authorized to state that Justice MAYNARD joins me in this separate opinion.

STARCHER, Justice, concurring.

(Filed Dec. 11, 2002)

I entirely agree with the partially dissenting opinion's position that basing a breach of promise claim on simply reading a newspaper article would be such a "far afield" stretch as to be untenable—at least under the facts of the instant case.

However, the majority opinion makes no such stretch. Rather, it is the dissent that has stretched—not just into the outfield, but entirely outside the park—by inexplicably failing to inspect the record, and then by wrongly accusing the majority of distorting that record.

1. Plaintiff Betty A. Tiernan's Response to Defendant's First Set of Interrogatories, also in the record, states in pertinent part as follows (note that this response is the alleged substance of a communication between Ms. Tiernan and the Defendants):

 *INTERROGATORY NO. 1:*

 1. Please give the substance of any and all conversations, communications or statements by or between you and any agent or employee of any of the Defendants relative to this matter.

 *ANSWER:*

 ... During the middle of March, plans were underway to have a meeting of nurses in order to openly discuss their concerns regarding staffing issues, floating, on-call, etc. Mike Bloomfield, RN, was working with Mr. Velianoff and Ms. Latorre to arrange this forum. Flyers were distributed at the three (3) divisions of CAMC about the nurses' meeting.

 On April 7, 1994 at 7:00 p.m., approximately 140 nurses and 35–40 administrative staff attended the meeting. I was under the impression that nurses would be chairing the meeting

. The partially dissenting opinion accepts the circuit court's characterization of the record as showing that the *sole* basis for Ms. Tiernan's breach of promise claim was her reading of a newspaper article. The opinion then affirmatively ratifies that characterization of the record—twice—by stating that "Ms. Tiernan made no claim that the [promise] was made directly with her or other nurses at a meeting[;]" and that "the newspaper article was the only piece of evidence presented by Ms. Tiernan to show [a promise]."

Let us, by consulting the record, examine the accuracy of these two statements that are made by the partially dissenting opinion.

Pages 341–342 of the record, part of the "Plaintiff's Response to Defendant's Memorandum Regarding Remanded Issues [before the lower court on the issue of summary judgment,]" include the following language:

As the Court will note by reference to the Plaintiff's interrogatory answer provided therein, the Plaintiff clearly stated that the Defendant's representative, George Velianoff, *told the Plaintiff* and approximately 140 nurses and 35–40 administrative staff who also attended a meeting regarding the protested float policy that the nurses had "every right to talk to newspaper reporters and that he would not retaliate if they chose to speak up."[Emphasis added.] [1]

with questions directed to the appropriate administrators. I found out that Mr. Velianoff would chair the meeting. Before the meeting started, Mr. Velianoff announced that it was called to his attention that representatives of the press were in the audience and he would not start the meeting until the press left.

There was some discussion about this situation; the nurses wanting the media to stay, administration wanting them to go. The two (2) female reporters left without incident.

Mr. Velianoff stated nurses had every right to talk to newspaper reporters and that he would not retaliate if they chose to speak up. He did say something to the effect that this particular meeting was closed to the media as well as the public; that it was considered a staff meeting being held on CAMC property.

The majority of the discussion during the meeting dealt with floating nurses, or resource sharing. Mr. Velianoff handled most of the questions and comments posed by the nurses, with little input from the other administrators. The meeting ended at approximately 9:30 p.m.

This assertion by Ms. Tiernan to the lower court, in response to CAMC's renewed motion for summary judgment, demonstrates that the statement in the partially dissenting opinion—that Ms. Tiernan "made no claim" that the promise was made directly to her or other nurses at a meeting—is one hundred percent wrong.

Also equally and entirely wrong is the statement in the partially dissenting opinion that there was "no evidence" of the promise being made to Ms. Tiernan, other than the newspaper article. To the contrary, Ms. Tiernan's sworn interrogatory answers were evidence, when submitted in response to a motion for summary judgment.

Therefore, in direct contradiction of the two statements made in the partially dissenting opinion, one can see that the record is crystal clear that Ms. Tiernan claimed before the lower court that she was at the meeting where the promises were allegedly made— and that she backed up her claim with evidence. Suggesting that her claim merely comes from a newspaper article is simply incredible.

These facts, to reiterate, are simply, fully, and clearly shown in the record.

The only conceivable explanation for the partial dissent's error on this issue is that it accepted the truth of erroneous statements in the lower court's order (and in a CAMC brief)—without actually examining the record to see if those statements were correct.

It is natural that on occasion judicial opinions will make inaccurate statements because the opinion has accepted as reliable statements that are made in a brief or order. There is rarely time or need to check every statement in such summary documents against the original record; and in most cases, any such inaccuracies are not important.

But when one intends to directly accuse others on the Court of distorting the facts in the record, I believe that it behooves the accuser to check and see whether the record in fact supports the accusation. In the instant case, obviously, no such check was made, and the results speak for themselves.

To summarize: in responding to CAMC's motion for summary judgment, Ms. Tiernan asserted directly to the lower court, with supporting direct evidence, that she had been at the meeting where a promise was allegedly made. Consequently, the majority opinion is correct in holding that her claim on this issue raised material questions of fact.