672 S.E.2d 395

**Crystal A. HATFIELD, Plaintiff Below, Appellant**

v.

**HEALTH MANAGEMENT ASSOCIATES OF WEST VIRGINIA, INC., D/B/A/ Williamson Memorial Hospital, and Jacqueline Atkins, Individually, and Cassie Ball, Individually, Defendants Below, Appellees.**

No. 33702.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 2008.

Decided Dec. 12, 2008.

Jeffrey V. Mehalic, Esq., Law Office of Jeffrey V. Mehalic, Charleston, for Appellant.

Debra A. Nelson, Esq., James A. Spenia, Esq., Mundy & Nelson, Huntington, for Health Management, Associates of West Virginia, Inc.

PER CURIAM:[1]

In this appeal from the Circuit Court of Mingo County, we are asked to review a case where an employer discharged an employee after only four days of employment. The employee filed a five-count complaint against the employer alleging, *inter alia*, that the employer had breached its contract with the employee. The circuit court granted summary judgment to the employer on all counts in the complaint.

After careful review of the briefs, the arguments of the parties, and all matters of record, we affirm the circuit court's orders granting summary judgment to the employer.

### I.

In March 2005, Williamson Memorial Hospital posted a notice seeking applications from existing hospital employees for a newly-created job, the "benefits and special projects coordinator." The special project coordinator was "to work between Human Resources and Maintenance doing filing, shredding, typing, etc.," and the hospital projected that at a pay rate of $7.50 per hour, the position would cost the hospital $7,800.00 per year. The coordinator position was created by Rob Channell, the hospital's director of human resources, and Gregg Moore, the hospital's director of plant operations. Several hospital employees inquired about the job, and Mr. Channell told those employees that the job would pay in the range of $7.00 to $9.00 per hour—an amount less that what many current employees were already earning or required. Existing hospital employees were also told that the job required a two-year degree. It appears that current hospital employees were thereafter not interested in the coordinator position.

Mr. Moore then proposed that his son's fiancee, appellant Crystal Hatfield, be hired for the job. The appellant had been employed at a firm in Charleston, West Virginia earning $12.00 per hour as an executive administrative assistant. The appellant formally applied for the job at the hospital, and was interviewed by Mr. Channell and the hospital's chief executive officer, Robert Mahaffey.

On March 28, 2005, the appellant received a letter from the hospital offering her the position at an annual salary of $29,120.00, and informing her of her eligibility to participate in the hospital's employee benefit program. The letter was signed by Mr. Mahaffey, Mr. Channell, and Mr. Moore. The parties agree that the letter did not make any promise or representation concerning the duration of the appellant's employment. The appellant signed the letter, and, in reliance upon the letter, resigned from her employment in Charleston.

Before beginning her employment at the hospital, the appellant received a copy of the hospital's employee handbook and acknowledged, in writing, her status as an at-will

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008 and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

employee. Specifically, the handbook form signed by the appellant stated:

> The employee handbook contains a brief description of the benefits offered by the facility and an overview of the facilities' policies and procedures. Your employment with the facility is for no definite period of time and nothing in this handbook is intended to nor does the handbook represent any type of employment agreement or contract. Your employment is on an "at-will" basis. Employment may be terminated by you or the facility at any time for any reason. This handbook and the policies, rules and procedures in it may be amended, modified or discontinued at any time by the facility in its sole discretion.

> No supervisor or management employee has authority to waive this disclaimer or to change your employment from an "at-will" basis which may be terminated at any time for any reason.

The appellant began her employment at the hospital on April 11, 2005. The record suggests that fellow employees quickly noted that the appellant did not have a two-year degree, and discovered that the appellant's salary was substantially higher than what was originally advertised.

Two individuals in charge of hospital operations—appellees Jacqueline Atkins and Cassie Ball—began to receive complaints from other hospital employees about the appellant's hiring. Ms. Adkins and Ms. Ball investigated the events surrounding the appellant's hiring, and determined that terminating the appellant was the only way to appease the disgruntled hospital employees.

Accordingly, on April 14, 2005, at the direction of Ms. Adkins and Ms. Ball, Mr. Channell terminated the appellant's employment. The appellant remained unemployed until she was rehired at her old job on September 19, 2005.

On May 31, 2005, the appellant brought suit against appellee Health Management Associates of West Virginia, Inc. (the parent corporation of Williamson Memorial Hospital) and against Ms. Adkins and Ms. Ball. The appellant's complaint alleged five causes of action: breach of contract, breach of the duty of good faith and fair dealing, detrimental reliance, tortious interference, and the intentional infliction of emotional distress.

In an order dated July 28, 2006, the circuit court granted summary judgment to the appellees as to the appellant's causes of action for breach of contract, breach of the duty of good faith and fair dealing, and detrimental reliance. In an order dated February 7, 2007, the circuit court granted summary judgment on the appellant's remaining claims of tortious interference and intentional infliction of emotional distress.

The appellant now appeals the circuit court's orders.

## II.

■ We review a circuit court order granting summary judgment *de novo*. Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus Point 4, *Painter*.

## III.

The appellant contends that the circuit court erred in dismissing each of the five causes of action in her complaint.

■ As to the first cause of action, the appellant alleges that the appellee hospital breached its contract with the appellant. The appellant contends that the March 28, 2005 letter she received from the hospital offering her a job, stating the job's salary and her eligibility to participate in the hospital's employee benefit program was, in fact, an offer of employment. When the appellant signed that letter, she contends that a contract was formed, and that her firing after only four days of employment constituted a breach of that contract.

The appellee hospital counters by arguing that even if the March 28, 2005 letter did form a contract of employment, the appellee had the right to terminate the appellant's

employment at any time because the purported contract had no provision addressing the duration of the employment. Accordingly, the hospital argues that there was no breach of contract. We agree with the appellee hospital.

 It is not the function of a court to make, extend or limit written agreements; a court is only to interpret and enforce the agreement. As we stated in Syllabus Point 3 of *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962):

> It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them.

We have plainly stated that "When a contract of employment is of indefinite duration it may be terminated at any time by either party to the contract." Syllabus Point 2, *Wright v. Standard Ultramarine & Color Co.*, 141 W.Va. 368, 90 S.E.2d 459 (1955). *In accord, Williamson v. Sharvest Management Co.*, 187 W.Va. 30, 415 S.E.2d 271 (1992); *Cook v. Heck's Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986). Employees relying upon a contract in "which the expected duration of employment was never specified are considered 'at will' employees." *Sayres v. Bauman*, 188 W.Va. 550, 552, 425 S.E.2d 226, 228 (1992).

The purported employment contract in the instant case contains absolutely no mention of the duration of the appellant's employment. There is nothing in the March 28, 2005 letter implying any long-term arrangement between the parties. Because it was for an indefinite period, the agreement— presuming it was an enforceable contract— established the appellant as an "at will" employee of the appellee hospital whose employment could be terminated at any time.

We therefore cannot say that the circuit court erred in granting summary judgment to the appellees on the appellant's breach of contract cause of action.

The appellant's second cause of action alleged—assuming that a contract was formed between the parties—that the appellees had breached an implied duty of good faith and fair dealing. The appellant argues that the circuit court erred in concluding that there is no "implied covenant of good faith and fair dealing in the context of an at-will employment contract."

 The appellees direct our attention to the case of *Miller v. Massachusetts Mut. Life Ins. Co.*, 193 W.Va. 240, 455 S.E.2d 799 (1995) *(per curiam)*, and the cases cited therein which discuss the covenant of good faith and fair dealing in the employment context. In *Miller*, the appellant urged the Court to adopt a duty of good faith and fair dealing into our jurisprudence surrounding at-will employment agreements. We examined our cases dealing with the duty,[2] and plainly rejected the appellant's position. We concluded clearly in *Miller* that:

> [O]ur law is well-settled: we do not recognize the implied covenant of good faith and fair dealing in the context of an at-will employment contract. Given that the Appellant has offered little justification for departing from this determined course, and that the overwhelming majority of other jurisdictions adhere to our position, we discern no error in the circuit court's ruling.

193 W.Va. at 244, 455 S.E.2d at 803.

We therefore find no error in the circuit court's order in the instant case concerning the appellant's cause of action for breach of an implied duty of good faith and fair dealing.

The third argument presented by the appellant concerns her cause of action for detrimental reliance. The appellant argues that she relied upon the hospital's March 28, 2005 offer of employment, and resigned her stable, secure employment in Charleston. Consequently, she was harmed by her termination after only four days of employment. The

---

**2.** *See Harless v. First National Bank in Fairmont,* 162 W.Va. 116, 124, 246 S.E.2d 270, 275 (1978); *Stanley v. Sewell Coal Co.,* 169 W.Va. 72, 76, 285

S.E.2d 679, 682 (1981); and *Shell v. Metropolitan Life Insurance Co.,* 183 W.Va. 407, 409, 396 S.E.2d 174, 176 (1990).

appellant alleges that, even if she is considered an at-will employee, a question of fact exists for a jury as to whether the appellant believed that her employment would be permanent.

The appellees argue that any subjective belief by appellant Hatfield that her employment would be permanent is unfounded, and is contradicted by her acknowledging her at-will status. The appellees point out that, in addition to signing a statement acknowledging her at-will status, the appellant also testified in her deposition that she understood she was an at-will employee.[3] The appellees assert that the appellant is, essentially, attempting to circumvent her at-will status by asserting reliance.

■■■ In Syllabus Point 3 of *Adkins v. Inco Alloys Intern., Inc.*, 187 W.Va. 219, 417 S.E.2d 910 (1992), we held that:

Where an employee seeks to establish a permanent employment contract or other substantial employment right, either through an express promise by the employer or by implication from the employer's personnel manual, policies, or custom and practice, *such claim must be established by clear and convincing evidence.* [emphasis added].

To establish detrimental reliance in the employment context, we have stated:

Equitable estoppel cannot arise merely because of action taken by one on a misleading statement made by another. In addition thereto, it must appear that the one who made the statement intended or

reasonably should have expected that the statement would be acted upon by the one claiming the benefit of estoppel, and that he, without fault himself, did act upon it to his prejudice.

Syllabus Point 4, *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965). Putting these two elements together, the parties agree that the burden was upon appellant Hatfield to show, (1) by clear and convincing evidence, that the appellee hospital made an express promise and "should have expected that such promise would be relied and/or acted upon by an employee," and (2) by a preponderance of the evidence that the appellant, through no fault of her own, reasonably relied upon the promise. *See Tiernan v. Charleston Area Medical Center, Inc.,* 212 W.Va. 859, 866, 575 S.E.2d 618, 625 (2002) (*per curiam* ).

■■■ After carefully reviewing the record, we find nothing to suggest—let alone establish by clear and convincing evidence—that the appellee hospital made any promise to appellant Hatfield that her employment would be permanent. The March 28, 2005 letter did not specify a term of employment, and the appellant conceded in her deposition that none of the hospital's management employees made her any promises of permanent employment. By her own admission, the appellant knew that she was an at-will employee. Furthermore, we see nothing in the record to suggest that the appellant reasonably relied upon the appellees' promises to

---

**3.** As the appellant, Ms. Hatfield, testified in her deposition:

Q: So you understood at the time that you accepted the employment with Williamson Memorial Hospital that you were ... what was called an at-will employee?
A: Yes.
Q: You understood that you could terminate your employment for any reason and you understood that? ...
A: Yes.
Q: And you understood that the hospital could terminate your employment for any reason?
A: Yes. But I also—and I may be wrong and just misinterpreted—I also understood that by having the letter signed by Mr. Mahaffey and Mr. Channell, that I was more secure—

that that was more of a contract for that position.
Q: Has anyone specifically told you that or was that just your understanding?
A: That was my understanding.
Q: Just so we're clear, no one specifically told you that?
A: No.
The appellant later testified:
Q: In any discussions with anyone at Williamson Memorial Hospital whether it be Mr. Moore, Mr. Channell, Mr. Mahaffey, anyone, did anyone ever give you any promises or any assurances of any specific duration of employment?
A: You mean like you'll be here for so long or forever?
Q: Yes.
A: No, it was never discussed.

conclude that she was being offered permanent employment.

We therefore cannot conclude that the circuit court erred in its decision to grant summary judgment on the appellant's detrimental reliance claim.

The fourth issue raised by the appellant concerns her claims against Ms. Atkins and Ms. Ball, individually. The appellant argues that Ms. Atkins and Ms. Ball, acting outside of the employment context, intentionally and tortiously interfered with the appellant's contract with the hospital. The appellant contends that these individuals never requested approval or permission from their supervisors to terminate the appellant.

The appellees, however, argue that there is no evidence of record that either Ms. Atkins or Ms. Ball was acting outside of their employment duties and authority in terminating the appellant's employment with the hospital. Because Ms. Atkins and Ms. Ball were acting as agents of the hospital, it was impossible for them to have tortiously interfered with the hospital's contract. We agree.

 Our law is clear that, in order for a party to be held liable for intentional interference with a contractual relationship, the party must be someone outside of the contractual relationship. In Syllabus Point 2 of *Torbett v. Wheeling Dollar Sav. & Trust Co.,* 173 W.Va. 210, 314 S.E.2d 166 (1983), we set forth the essential elements of a claim for tortious interference with a contract or business relationship:

To establish prima facie proof of tortious interference, a plaintiff must show:

(1) existence of a contractual or business relationship or expectancy;

(2) *an intentional act of interference by a party outside that relationship or expectancy;*

(3) proof that the interference caused the harm sustained; and

(4) damages.

If a plaintiff makes a prima facie case, a defendant may prove justification or privilege, affirmative defenses. Defendants are not liable for interference that is negligent rather than intentional, or if they show

defenses of legitimate competition between plaintiff and themselves, their financial interest in the induced party's business, their responsibility for another's welfare, their intention to influence another's business policies in which they have an interest, their giving of honest, truthful requested advice, or other factors that show the interference was proper. [Emphasis added].

We stated the principle in reverse fashion in Syllabus Point 1 of *Shrewsbery v. National Grange Mut. Ins. Co.,* 183 W.Va. 322, 395 S.E.2d 745 (1990), where we said:

It is impossible for one party to a contract to maintain against the other party to the contract a claim for tortious interference with the parties' own contract; each party has agreed to be bound by the terms of the contract itself, and may not thereafter use a tort action to punish the other party for actions that are within its rights under the contract.

 The appellant does not challenge the soundness of our decisions holding that no one can be liable for tortious interference with his own contract. Instead, it appears that the appellant is arguing that Ms. Atkins and Ms. Ball were somehow acting outside of their employment duties with the hospital when they decided to terminate the appellant's employment with the hospital. Unfortunately for the appellant, we find no evidence supporting this assertion.

The record establishes that appellees Ms. Atkins and Ms. Ball were jointly responsible for managing the day-to-day operations of Williamson Memorial Hospital at the time of the appellant's termination. The circuit court found, and we agree, that there was no evidence suggesting that Ms. Atkins and Ms. Ball were acting outside the scope of their employment and duties as employees of the hospital when they ordered that the appellant's employment be terminated. Because they were acting within the scope of their employment, appellees Ms. Atkins and Ms. Ball were acting on the hospital's behalf— and, as our law is clear, the appellee hospital cannot be held liable for tortious interference with its own contract with the appellant.

We therefore find no error in the circuit court's decision to grant summary judgment on the appellant's intentional interference claim.

■ Finally, we turn to the appellant's cause of action alleging that the appellees should be liable for intentional infliction of emotional distress. The appellant alleges that the appellees failed to inform her that her employment was problematic, or that her termination was imminent. In fact, the day before her termination, the hospital's director of human resources reassured her that while some questions had arisen about her employment, that she had nothing to worry about.

■ We set forth the elements of a claim for intentional infliction of emotional distress in Syllabus Point 3 of *Travis v. Alcon Laboratories, Inc.*, 202 W.Va. 369, 504 S.E.2d 419 (1998):

> In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

We made clear in Syllabus Point 4 of *Travis* that it is the circuit court, in the first instance, that is charged with evaluating whether a defendant's actions might reasonably be interpreted as outrageous:

> In evaluating a defendant's conduct in an intentional or reckless infliction of emotional distress claim, the role of the trial court is to first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress. Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination.

In the instant case, the circuit court concluded, as a matter of law, that the appellees did nothing that could reasonably be regarded as so extreme and outrageous as to constitute the intentional infliction of emotional distress. The record is clear that the appellees did nothing to ridicule, harass, or verbally abuse the appellant, nor make any derogatory or inappropriate statements with respect to either her employment or her termination.

Accordingly, we find that the circuit court did not err in granting summary judgment to the appellees on the appellant's cause of action for intentional infliction of emotional distress.

### IV.

We therefore conclude that the circuit court did not err in granting summary judgment to the appellees. The circuit court's July 28, 2006 and February 7, 2007 summary judgment orders are affirmed.

Affirmed.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH, sitting by temporary assignment.